[L.A. No. 29743. In Bank. Mar. 26, 1971.]

U.S. AUTO STORES et al., Petitioners, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
HERMAN FREDERICK BRENNER, Respondents.

## Counsel

Weingand, Kendig & Stockwell and Donald James Drost for Petitioners.

Everett A. Corten, Rupert A. Pedrin, Nathan Mudge, Sheldon M. Ziff, Gabriel L. Sipos and Byron R. Bentley for Respondents.

## Opinion

**PETERS, J.**—Petitioners U.S. Auto Stores and American Hardware Mutual Insurance Company claim that the award of permanent disability of the Workmen's Compensation Appeals Board is not supported by substantial evidence and that the award is not supported by the findings. We have concluded that the board's decision is supported by substantial evidence and that the findings issue was not raised before the board and was therefore waived.

Herman Frederick Brenner, a 19-year-old auto parts salesman, sustained multiple injuries including a skull fracture with brain damage when he was struck by a truck in the course of his employment. He also suffered internal injuries requiring ten major abdominal surgeries during the five-year post-injury period.

At the permanent disability hearings, voluminous medical records were received in evidence. Dr. Steward, who performed the surgeries, stated in his final report of June 11, 1968, that Brenner "is enjoying good health . . . and his abdomen seems to be in fine condition." He further stated that the applicant had "no difficulty from his mild diabetes."

Dr. Wood, in his report of September 25, 1968, described the following symptoms: pyrosis (heartburn), bowel dysfunction, increased irritability and emotional lability, marked weakness and easy fatigability, anosmia (loss of sense of smell) and mild diabetes mellitus. Dr. Wood estimated

applicant's permanent disability "at no greater than 15 to 20% at the present time. . . ."[1]

Applicant submitted two medical reports, one by Dr. Fitzgibbon, a neurologist, prepared in July of 1965, and one by Dr. Kritzer, an internist, dated August 24, 1968. Dr. Fitzgibbon described applicant as suffering from "complete and permanent" anosmia, "a pattern of reacting to change in the contents of the stomach" which, the doctor said, may or may not get better, and finally, and, in the doctor's words, "by far the most important," some degree of general brain damage which made him "much more impatient, more irritable, more querulous, and more unreasonable than he used to be, . . ." Dr. Fitzgibbon thought that this latter symptom might improve if Brenner developed "habits and attitudes which will help him control his tendency to easy and excessive reaction to emotional situations."

Dr. Kritzer's report included the following observations: Applicant's greatest problem is intense anxiety and he is "emotionally tremendously unstable"; he has diabetes which "was materially contributed to by the fact that part of his pancreas had to be destroyed in order to perform some of the operations in his abdomen"; an inability to smell; "a great deal" of indigestion and heartburn; "diarrheic bowel movement which at times causes him to soil his pants"; recurrent low backaches; difficulty in taking deep breaths; lack of physical stamina; and a weight-lifting limitation of 10 to 15 pounds. Dr. Kritzer stated he could not think of a job Brenner could take "except possibly in a semi-sedentary or a sedentary occupation where he is not emotionally abraded by contact with either superiors or the public." After stating that Brenner's diabetes could lead to severe disabling complications in the future and that he is a candidate for abdominal troubles of the obstructive type, Dr. Kritzer concluded, "The best I can give you with all the aforementioned entities [is] that his disability for the overall labor market is probably somewhere around 75-80% at the present time and will probably remain so for the future."

Applicant testified that he has lost his sense of taste and smell, is a borderline diabetic and must watch his diet, has general weakness and fatigue, especially weakness in his back which is noticeable when he lifts (he lifts up to 40 pounds), headaches at least once a week, pain in his upper abdomen and around his surgical scars, tightness of the throat and upper chest when he eats, shortness of breath after meals, three or four explosive bowel movements every day such that he must be near a toilet, and indi-

---

[1]Petitioners also submitted numerous other medical reports and records which deal with applicant's condition and treatment before his condition became permanent and stationary.

gestion so that he can only eat half a normal size meal (he has been instructed by Dr. Wood to eat six small meals a day). He has periodic episodes of nausea and vomiting. He feels that he can't deal with the public because of the stress and strain involved, and he goes out rather infrequently because public contact and noise make him nervous.

Applicant's wife testified to his tightness in the chest, backaches, weak knee, headaches, restricted diet and, finally, to his aversion to being around groups of people, although he had enjoyed such contacts before his injury.

The referee requested a recommended rating from the Permanent Disability Rating Bureau based on the following instructions: "By reason of multiple injuries on May 3, 1963 requiring 9 or 10 surgical procedures applicant has incurred the following residuals: Borderline diabetic condition, loss of the sense of smell and impairment of the sense of taste to the four primaries, infrequent minor headaches, recurrent low backache and aching of the right knee, marked anxiety state, disturbance of the bowel function resulting in explosive bowel movements about four times a day, generalized weakness and easy fatigability. [¶] The above-described factors result in a 77½ % reduction in his ability to compete in the open labor market."

The rating expert recommended a 77½ percent rating. He testified that because the referee specified the disability in his instructions, he did not make his own independent judgment as to the extent of disability nor did he adjust the rating for age or occupation. He further testified that had the referee not specified that the disability was 77½ percent, the remaining rating instructions were not specific enough for him to formulate an independent rating.[2] To the question whether he could formulate a rating based on the referee's rating instruction without the 77½ percent instruction, he replied, "I could read 100 per cent in that . . . I assume, I may be wrong, marked anxiety state would be the same as pronounced and it probably is."[3]

In his opinion, the referee stated that the loss of smell and taste, the headaches, backache, and pain in the knee were minor factors of disa-

[2]The instructions did not contain the terms "minimal," "slight," "moderate," "severe," normally used to indicate the extent of subjective disability nor did they otherwise describe the effects of each factor of disability in relationship to his ability to work.

[3]There is no disability labeled "anxiety state." The rating expert was apparently referring to "pronounced neurosis" or "pronounced post-traumatic head syndrome" (which includes impairment of memory, headaches, fatigability, nervousness and irritability), both of which are rated at 100 percent. (See Schedule for Rating Permanent Disabilities (1966) p. 2.)

bility. Of greater importance, he said, were the diabetes and residuals from the surgeries which accounted for applicant's weakness and fatigability and would limit him to moderate-to-light work considered alone. Applicant's anxiety state would preclude him from public contact and limit his contact with co-employees. The bowel disturbance, while it did not amount to incontinence, made it necessary that applicant work near a men's room and be able to leave his work suddenly.

The referee further stated that the medical report of Dr. Kritzer and the applicant's testimony "is the paramount evidence which warrants the 77½ % recommended rating." He concluded that "[t]he composite picture of permanent disability could be approached by evaluating the permanent disability on a fragmentary basis (which could easily result in a permanent disability rating equal to or in excess of the recommended 77½ %), but the better approach in this type case is to recognize that the composite permanent disability is such a significant impairment of this man's ability to compete on the open labor market that he should be entitled to a 77½ % rating, which is substantially in accord with Dr. Kritzer's recommendation."[4]

Petitioners sought reconsideration by the board on the grounds that (1) the evidence did not justify the findings of fact in that there was no competent evidence to support a rating of 77½ percent and that the medical report of Dr. Morton Kritzer should be stricken because it was unreliable and contained erroneous information; and (2) that by "disregarding" the other medical evidence and by "delegating his authority to decide extent of labor market disability" to Dr. Kritzer, the referee so abused his discretion that he acted without and in excess of his powers.

In his report on reconsideration, the referee not only discussed and answered the two points raised in the petition, but also further elaborated upon his "composite disability" approach to rating although he noted that petitioners had failed to raise the question in their petition. The board denied reconsideration for the reasons stated in the referee's report on reconsideration.

Petitioners first contend that the board's decision is not supported by substantial evidence. ■ The decision is supported by substantial evidence if the degree of disability found by the referee is within the *range*

---

[4]In his report on reconsideration, the referee further justified his "composite disability" approach by pointing out that there were major disability components in this case which are not easily reduced to the various plateaus documented in the rating schedules. He gave as examples the weakness and fatigability secondary to the surgeries, the bowel disturbance which fell somewhat short of incontinence of the feces, and the personality changes and anxiety state which impaired applicant's ability to compete in the labor market.

of evidence in the record. It is not necessary that there be evidence of the exact degree of disability. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.* (1948) 33 Cal.2d 89, 93 [199 P.2d 302].)

■ The 77½ percent rating was well within the range of total disability ratings which the evidence could reasonably support. The referee pointed out that had he rated each separate disability factor, the total rating could easily have equaled or exceeded 77½ percent. The rating expert testified that the general description of the factors of disability given him by the referee could add up to a 100 percent rating.

*Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd.,* 252 Cal.App.2d 327 [60 Cal.Rptr. 442] and *Subsequent Injuries Fund* v. *Ind. Acc. Com.,* 30 Cal.Comp.Cases 336, relied upon by U.S. Auto Stores, are not in point. In *Fidelity & Cas. Co.,* the referee based his award on a mistaken belief as to the location of the applicant's injury. In *Subsequent Injuries Fund,* the referee rated applicant's injury at 35 percent, a rating which, when combined with previous disability, qualified him for the benefits of the Subsequent Injuries Fund, even though the most favorable evidence and findings supported a much lower rating. (*Subsequent Injuries Fund* v. *Ind. Acc. Com., supra,* at p. 343.) (The referee's rating was therefore not within the *range* of ratings which the evidence could support.) In both these cases, there was *no* correlation shown in the referee's opinion or elsewhere between the evidence and the award.

■ To reach the 77½ percent rating the referee admittedly placed more weight upon applicant's evidence than on petitioners', but this, as the trier of fact, he may certainly do.[5] ■ Even if Dr. Kritzer's report was the *only* evidence in support of the award (which it was not) the competent opinion of a single physician is sufficient evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432]; *Allied Comp. Ins. Co.* v. *Ind. Acc. Com.,* 57 Cal.2d 115, 122 [17 Cal. Rptr. 817, 367 P.2d 409].)

Finally, in this connection, petitioners claim that the referee, in reaching the 77½ percent figure, relied solely on Dr. Kritzer's nonexpert estimate of a 75-80 percent reduction in ability to compete in the open labor market. The referee specifically denied he used Dr. Kritzer's figures, but stated

---

[5]Petitioners' claim that Dr. Kritzer's report was incompetent because it was based on erroneous assumptions appears wholly unfounded. Most of the doctor's statements were corroborated by the applicant's testimony. There were a few minor variations, such as the applicant's weight-lifting ability (applicant testified he was able to lift more than the doctor said he could) and the details of his job history (the doctor said applicant was unable to stay on a job for more than a few months when, in fact, applicant stayed with one company a longer time but changed jobs *within* the company twice because he could not handle the work.)

in his report on reconsideration that he arrived at his own figure independently, and based on all the evidence. The record presents no reason to doubt that this referee, experienced, as all referees must be, in rating disabilities, was capable of and did make his own appraisal of the extent of applicant's disability.

Petitioners' second major contention is that the referee failed to make specific findings, both in his instructions to the rating bureau[6] and in his opinion, of the factors of disability contributed by each of the applicant's disabling conditions.

Section 5904 of the Labor Code provides that "[t]he petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration." Numerous cases have interpreted this section to mean that issues not raised in the petition before the board cannot be raised by writ of review. (See, e.g., *Alford* v. *Industrial Accident Com.*, 28 Cal.2d 198, 206 [169 P.2d 641]; *Bussa* v. *Workmen's Comp. App. Bd.*, 259 Cal.App.2d 261, 264 [66 Cal.Rptr. 204].) Petitioners did not raise the findings issue in their petition.

Nonetheless, they assume that because the referee discussed his "composite disability" approach to rating this workmen's disabilities in his report on reconsideration and that report is incorporated by the board as the basis of its denial of the petition, the inadequacy of the referee's findings as discussed in the report can be challenged as a violation of section 5908.5 of the Labor Code.[7] Section 5908.5 requires that any decision of the appeals board granting or denying a petition for reconsideration state the evidence relied upon and specify in detail the reasons for the decision.[8]

Petitioners' assumption is erroneous. Section 5904 quite clearly states

---

[6]Section 10904 of the Rules of Practice and Procedure of the Workmen's Compensation Appeals Board requires that the person requesting a rating from the Permanent Disability Rating Bureau "describe the disability in full on the face of the request." When the person requesting the rating is a referee, his description of the factors of disability are, in effect, findings of fact as to the nature and extent of the disability. (See, e.g., *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App.2d 327, 331; Cal. Workmen's Compensation Practice (Cont.Ed.Bar) p. 553.)

[7]When the board *denies* a petition for reconsideration, its order meets the section 5908.5 requirement that the reasons be specified by incorporating by reference the referee's report on reconsideration. (See, e.g., *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 635; *Gaiera* v. *Workmen's Comp. App. Bd.,* 271 Cal.App.2d 246, 248 [76 Cal.Rptr. 656].)

[8]The board's failure to adequately state the evidence and reasons for the decision, in its own statement or the incorporated report of a referee, can, of course, always be raised by writ of review. (See, e.g., *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627.)

that all objections not raised in the petition for reconsideration are deemed waived. ▮ The policy motivating that section is to give the board an opportunity to rectify its referees' errors. (See, e.g., *Heath* v. *Workmen's Comp. App. Bd.* (1967) 254 Cal.App.2d 235, 239 [62 Cal.Rptr. 139].) That policy would be thwarted by permitting review in this case under section 5908.5.

Because the findings issue was not raised in the petition for reconsideration, the board was not called upon to consider it in deciding to grant or deny reconsideration. ▮ We therefore cannot know whether it considered or accepted the referee's gratuitous discussion of his method of determining permanent disability when it incorporated his report. We hold that the evidence and reasons for the decision stated in the referee's report are challengeable by writ of review under section 5908.5 only insofar as that report constitutes a statement of the evidence and reasons for rejecting the contentions raised by the petition for reconsideration. ▮ The referee's failure to make specific findings as to the disabling extent and effect of each factor of the workman's over-all disability was not raised in the petition for reconsideration and was therefore waived.

▮ Petitioners also contend that the referee failed to adjust the rating for age and occupation as required by Labor Code, section 4660, subdivision (a). This issue, too, is waived by failure to raise it on reconsideration. Petitioners' argument that the issue was raised by a reference to the rating expert's failure to make that adjustment in the statement of the facts in their petition for reconsideration must be rejected. While the statement of facts suggests the claimed deficiency the point is nowhere discussed or even mentioned in the petitioners' argument, nor does it logically come within the objections they raised there. The board was therefore not called upon to consider the issue and it is waived.

The decision of the Workmen's Compensation Appeals Board is affirmed.

Tobriner, Acting C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Wood, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.