[Civ. No. 41756. Second Dist., Div. Three. Sept. 12, 1973.]

EUGENE L. ABRON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD
and NATIONAL SUPPLY, Respondents.

## COUNSEL

Alan G. Barry for Petitioner.

Franklin O. Grady, Sheldon C. St. Clair, Marcel L. Gunther, Clopton, Penny & Keeney and Mort L. Clopton for Respondents.

## OPINION

**COBEY, J.**—Petitioner, Eugene L. Abron, seeks annulment of a decision and order of the Workmen's Compensation Appeals Board (hereafter Board) on reconsideration finding that his industrial injury was not proximately caused by the serious and wilful misconduct of his employer (hereafter Employer) respondent, National Supply, a division of Armco Steel. The decision rescinded the prior award made on this ground by one of its referees against the Employer in the amount of $3,156.15. (Lab. Code, § 4553.)[1]

Petitioner contends that this decision and order should be annulled because the Board, through its referee, denied petitioner constitutional due process of law in that: (1) his request for a prehearing inspection by his expert witness on safety procedures of both the Employer's premises where the injury occurred and of certain equipment involved in the injury was arbitrarily denied, and (2) his counsel's examination of this witness at the subsequent hearing on the issue of the Employer's possible serious and wilful misconduct was unduly restricted. Both of these contentions have merit and we will, therefore, annul the Board's award for further proceedings before it consistent with the views expressed in this opinion.

[1]All section references hereafter are to the Labor Code unless otherwise indicated.

## FACTS

Prior to the ordered injection of a dry powder by petitioner, a furnace helper, into a blast furnace, compressed air was blown through a Blast-crete gun for two minutes to remove water and other foreign material from the gun. Despite this safety precaution, water remaining in the gun was injected into the furnace. This resulted in the explosion that injured petitioner.[2] Water and molten metal form a highly explosive mixture.

## DISCUSSION

1. *The Referee's Denial of Petitioner's Request for Limited Prehearing Discovery.*

Some two weeks before the hearing of the issue of possible serious and wilful misconduct by the Employer, petitioner's counsel, by letter, requested the referee hearing the case to order the Employer to permit petitioner's safety expert to inspect the place where petitioner was injured and certain of the equipment involved in the injury—namely, the Blast-crete gun and compressor lines. The occasion for this request was the Employer's refusal to permit petitioner's safety expert such access. About a week later, by letter to petitioner's counsel, the referee declined the request on the grounds that petitioner had not shown good cause for the requested order and that, in any event, discovery is not permitted in proceedings before the Board.

Obviously petitioner's safety expert had to familiarize himself thoroughly and at firsthand with both the place where the explosion occurred and with the equipment petitioner was using just prior to the explosion if he was going to testify with maximum effectiveness on the issue of the Employer's possible serious and wilful misconduct at the then forthcoming hearing. Therefore, the requested inspection should have been permitted. The results of such inspection would have been reported to the commission in the form of the expert's testimony at the subsequent hearing.

We hold that under section 5701 the referee should have granted the request. This section provides that the Board may, with or without notice to either party, cause, among other things, inspection of the premises where the injury occurred. It can be construed to authorize only Board inspections and it does not mention inspection of the equipment involved in the injury to the employee. But under the principle of liberal construction of

[2]The Employer's subsequent investigation of the cause of the explosion that injured petitioner indicated that probably water remained in the gun because a plug had formed over the outlet through which the water would ordinarily escape or possibly that water had been placed in it by vandals.

the Workmen's Compensation Act, expressly enjoined upon courts by section 3202, we deem that this section impliedly includes authorization to the Board for inspection by the parties of the premises where the injury occurred and for inspection of equipment involved in the injury as well.

## 2. *The Undue Restriction of the Testimony of Petitioner's Safety Expert.*

The only witness at the hearing on the issue of the Employer's possible serious and wilful misconduct was petitioner's safety expert, a metallurgist, who had been long engaged both in the practical and research aspects of metallurgy. On objection, the referee refused to let him testify as to whether "blowing out the gun was an adequate means of insuring that no water was present . . . [in it]." Part of the basis of the Employer's objection to this inquiry was that this witness was not aware of "the exact setup insofar as the compressed air system goes"—one of the very things he apparently had desired to learn by the prehearing inspection the referee had denied. Petitioner then tried to establish through this witness' testimony that the Employer had not dried the compressed air before blowing it through the gun. Objection to this inquiry was sustained—presumably on the same basis that this witness had no familiarity with either the gun or the compressed air system the Employer had actually used just prior to the explosion. Then petitioner's counsel asked the witness whether in his opinion the Employer had "used methods and processes reasonably adequate to render the applicant's place of employment safe insofar as using the Blastcrete compressor gun was concerned." Employer's counsel again objected and the referee sustained the objection in part on the strange theory that this was the question he had to decide ultimately. We realize that the Evidence Code does not govern the admission of evidence in proceedings before the Board (§§ 5708, 5709); but we can see no reason why the referee should not have voluntarily followed the code on this point—namely, that opinion evidence is not objectionable "because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) He also sustained this objection because the witness had not seen the Blastcrete gun—something that the referee himself had denied this witness. Petitioner's counsel then tried to go into alternative ways of perhaps greater safety in injecting "a deoxidant below the surface of the bath." Again, Employer's counsel objected and the referee sustained the objection. This concluded petitioner's attempt to prove through this expert witness that the explosion that injured petitioner had been caused by the serious and wilful misconduct of the Employer.

We hold that the foregoing restrictions upon the testimony of this expert witness for petitioner denied petitioner constitutional due process of law.

(See *Hegglin* v. *Workmen's Comp. App. Bd.*, 4 Cal.3d 162, 174-175 [93 Cal.Rptr. 15, 480 P.2d 967]; *Pence* v. *Industrial Acc. Com.*, 63 Cal.2d 48, 50-51 [45 Cal.Rptr. 12, 403 P.2d 140]; *Kaiser Co.* v. *Industrial Acc. Com.*, 109 Cal.App.2d 54, 56-58 [240 P.2d 57].) In large part his proposed testimony was rejected because of his lack of personal firsthand knowledge of the place of the explosion and of the equipment used just prior thereto—an ignorance for which the referee was solely responsible.

It is true that nowhere throughout this hearing on the issue of the Employer's possible serious and wilful misconduct did petitioner's counsel make, as he should have, a comprehensive and sufficient offer of the evidence he expected to develop from this witness which, if accepted by the trier of fact, would have established the Employer's serious and wilful misconduct. But the referee's attitude was so hostile to the development of even the preliminary evidence toward this end that in all probability he would have rejected an adequate offer of proof. The law does not require idle acts. (Civ. Code, § 3532.)[3]

Under the aforementioned section 5708, notwithstanding its discretionary language, we hold that the referee was obligated under the circumstances of this case to make inquiry on this crucial issue "in the manner . . . which is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of . . . [The Workmen's Compensation Act]." (See *Walker Min. Co.* v. *Indus. Acc. Com.*, 35 Cal. App.2d 257, 263 [95 P.2d 188].)

We intimate no opinion as to whether, on remand, petitioner can prove serious and wilful misconduct on the part of the Employer in this case. ■ To authorize an award of increased benefits under section 4553, an employer's misconduct must be shown to be both serious and wilful. "Wilful misconduct" thereunder necessarily involves deliberate, intentional or wanton misconduct in doing or in omitting to perform acts with knowledge or appreciation of the fact, on the part of an employer, that danger is likely to result therefrom. The mere failure to perform a statutory duty, in itself, is not wilful misconduct. ■ To constitute wilful misconduct there must be either actual knowledge, or that which the law deems the

---

[3]The referee subsequently found that petitioner's injury "was proximately caused by the serious and wilful misconduct of the employer in that they [*sic*] allowed moisture and/or water from an air condenser in an overhead crane to be in a position directly over the Blastcrete gun which allowed a substantial amount of water to enter the equipment and be injected into the furnace causing applicant's injury." The Board, however, in its decision under review, pointed out that, on the basis of the superintendent of melting's testimony, the possibility that the water that remained in the Blastcrete gun (when it injected both the powder and the water into the blast furnace) came from this source was remote.

equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (See *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102, 108, 117 [251 P.2d 955].) An employer must know the probable consequences of his failure to provide more adequate safety devices or a safer place to work. He must have put his mind to the existence of a danger to an employee and have failed to take precautions to avert that danger. (See *Rogers Materials Co.* v. *Ind. Acc. Com.*, 63 Cal.2d 717, 723 [48 Cal. Rptr. 129, 408 P.2d 737].)

The award is annulled and the case is remanded to the Board for further proceedings consistent with the views expressed in this opinion.

Ford, P. J., and Allport, J., concurred.