[Civ. No. 53250. Second Dist., Div. Three. Oct. 24, 1978.]

JOHN T. MORGAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
CITY OF SANTA MONICA et al., Respondents.

COUNSEL

Lewis & Marenstein and Alan B. Marenstein for Petitioner.

James J. Vonk, Robert M. Jakob, Arthur Hershenson and Frank Evans for Respondents.

OPINION

ALLPORT, J.—Petitioner John T. Morgan contends the board and the permanent disability specialist erred in the manner in which they rated the multiple factors of disability from his industrial injury. We hold that the board needs to consider the question further. Accordingly, we annul the present award and remand the matter to the board.

I

PROCEEDINGS BEFORE THE APPEALS BOARD

Morgan, while employed from November 1, 1946, through April 30, 1974, as a police sergeant by respondent City of Santa Monica, whose

workers' compensation insurance carrier was respondent State Compensation Insurance Fund (State Fund), sustained an injury arising out of and occurring in the course of his employment causing hypertension, peptic ulcer, hepatitis, gastrointestinal bleeding and hernia. On May 11, 1976, a findings and award issued finding permanent disability in the amount of 74 percent.

On March 29, 1977, Morgan filed a petition to reopen his claim, alleging new and further disability. (See Lab. Code, §§ 5410, 5803, 5804.) ■ ■■■ On the petition to reopen, the judge found good cause to reopen and directed the following description of the factors of Morgan's permanent disability to the Disability Evaluation Bureau for evaluation:[1]

"Applicant is limited to light work as a result of incisional hernia.

"Hypertension limited applicant to light work with no emotional stress."

The rating specialist computed a 76 percent rating of the disability factors using the following formula:

| 19. - 50 | 54H | 56 | 61) | |
|----------|-----|----|----|----|
| | | | ) | $76^2$ |
| 6.3 - 20 | 54I | 27 | 31) | |

---

[1]In its brief State Fund makes an "equitable argument" that there was no basis for granting the petition to reopen and therefore Morgan "is in no position to characterize the present rating instructions as inadequate or improper." We have two comments on State Fund's argument in this regard.

First, if State Fund felt there was no basis for granting the petition to reopen it should have petitioned for reconsideration on the issue and then sought judicial review on the question. However, having failed to raise the issue by petition for reconsideration, State Fund has waived this contention. (See Lab. Code, § 5904; *Cedillo* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 456 [96 Cal.Rptr. 471, 487 P.2d 1039]; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 477 [93 Cal.Rptr. 575, 482 P.2d 199].)

Second, we observe that in the initial proceedings where Morgan received the 74 percent rating Morgan was rated *solely* for the hypertension condition. This is the rating specialist's testimony in connection with the petition to reopen. While not clear from the record, it appears that the hernia was not rated in the initial proceedings as such condition was not permanent and stationary. The hypertension related disability was permanent and stationary then. It was not until about three months after the May 1976 award that the hernia was operated on. Thereafter the hernia became permanent and stationary and hence ready for rating. (Cf. *Perry* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 887 [136 Cal.Rptr. 309].) Whether this procedure was proper is not before us. The sole question we must decide is whether based on the rating instructions issued upon granting of the petition to reopen the percentage of permanent disability was properly computed.

[2]The "19." and the "6.3" designate the part of the body involved. "19." refers to the hernia and "6.3" refers to the hypertension. The "50" after the "19." and the "20" after

Morgan objected to the rating by filing a written "Motion to Strike Recommended Rating." Morgan's basic contention was that the rater erred in assigning a 20 standard rating to the hypertension disability in that such standard failed to encompass all the factors of disability described.

The rater was then cross-examined by the parties. The rater testified: the 50 standard for the hernia was based upon the light work restriction; the 20 standard for the hypertension disability is based on the restriction from emotional stress; the light work restriction for the hypertension (a 50 standard) "overlapped" with the light work restriction for the hernia and hence nothing in the 20 standard for the hypertension reflects the work restriction; *the multiple disabilities table does not take into consideration such "overlapping"*; and, in her opinion it would be improper to first rate the light work for the hernia at a 50 standard, then rate the hypertension at a 60 standard (50 percent for the light work plus 10 percent for the avoidance of emotional stress)[3] and then combine the two on the multiple disabilities table.

The judge denied Morgan's motion to strike the rating and issued a 76 percent disability award.

the "6.3" are the standard rating assigned by the rater to the description of disability pertaining to that part of the body. The "54" in each line refers to the occupational group number—the letter following the "54" is the adjusting factor of the standard rating for that occupation. The reason one adjusting factor is "H" and one is "I" is that the occupational variant depends upon the part of the body involved. Thus, here for the hernia, the 50 standard rating for a policeman adjusts to 56 percent and for the hypertension the 20 standard rating adjusts to 27 for a policeman. The "56" and "27" are further adjusted for Morgan's age to "61" and "31" respectively. (See Lab. Code, § 4660; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1978) § 11.03; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) §§ 7.34-7.37; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) §§ 15.18-15.25; Welch, Fundamentals for Applying Cal. Schedule for Rating Permanent Disabilities (1975) pp. 3-6.)

The "76" is arrived at since Morgan can receive only one rating for his injury. Therefore, the "61" and "31" must be combined to get one rating. In order to avoid duplication of the factors of disability represented by the two ratings of "61" and "31" the mechanical multiple disabilities table must be applied. Using this table the "61" and "31" are combined to a "76" rating. (See *Mihesuah* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720, 726-727 [127 Cal.Rptr. 688].)

A 76 rating amounts to 429.25 weeks of disability payments at the rate of $70 a week in the total sum of $30,047.50 and thereafter a life pension at the rate of $25.85 per week.

[3]According to the rater the avoidance of emotional stress by itself is a 20 standard but when combined with the work restriction of light work, the avoidance of emotional stress becomes a 10 percent add on to the 50 percent standard for the light work restriction, thus creating a 60 standard.

Morgan sought reconsideration. The Board, with one commissioner of the three-member panel dissenting, granted reconsideration and issued new rating instructions as follows: "Applicant is limited to light work as a result of incisional hernia. Hypertension limited applicant to light work with no emotional stress. Abdominal discomfort on lifting virtually anything; tight clothing results in increased abdominal discomfort; hernia repair has resulted in 12″ surgical scar causing applicant to be guarded in all his movements."

The same rater issued the identical recommended rating of 76 percent on the new instructions. Morgan renewed his objection to the rating by filing a written "Motion to Strike Rating." The Board noting the new rating of 76 percent was the same as the old then affirmed and accepted the 76 percent award.[4]

## II

### DISCUSSION

Morgan's position is that the rating should be:

| 19. | - 50 | 54H | 56 | -61) | |
|-----|------|-----|-----|------|----|
| | | | | ) | 96 |
| 6.3 | - 60 | 54I | 69 | -74) | |

This rating utilizes a 60 standard (light work plus no emotional stress) for the hypertension. The 74 rating for the hypertension and the 61 rating for the hernia are then combined on the multiple disabilities table to get the 96 rating.

A. *Hutchinson, Mercier, Hegglin and Mihesuah*

 Understanding the issues involved here requires review of three Supreme Court opinions and one opinion of this court.

---

[4]In its opinion and decision after reconsideration the board states no objection to the new rating had been received. This appears incorrect; Morgan, as stated, renewed his objection.

Since the same rater evaluated the board's rating instructions upon reconsideration, it is clear that the rater in evaluating the board's rating instructions applied the same principles she previously utilized in evaluating the judge's rating instructions on the petition to reopen. Further cross-examination of the rater was unnecessary as it would have been an "idle act" and accordingly failure to again cross-examine the rater does not preclude Morgan's contentions before this court. (See *Abron* v. *Workers' Comp. Appeals Bd.* (1973) 34 Cal.App.3d 232, 237 [109 Cal.Rptr. 778]; cf. *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162 [93 Cal.Rptr. 15, 480 P.2d 967].)

In *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902], the injured employee suffered two successive industrial injuries. The first one was in 1958 to the injured's neck and he received a 26 percent rating based upon the following factors of disability: " 'Constant minimal pain in the back of neck extending out over left shoulder, at times extending to the right shoulder, at times extending to the fingertips of both hands; at times pain becomes slight, particularly in performing overhead work, climbing ladders, and scaffolds, becoming moderate on lifting over 35 lbs.' " (*Hutchinson, supra,* 59 Cal.2d 45, 47.)

Thereafter, the injured sustained the second injury, a back injury, which had the following factors of disability: " 'Minimal low back pain increased to slight on heavy work. He wears a corset-type brace which reasonably controls the low back pain.' " (*Ibid.*)

Thus, while the first and second disabilities were not identical, they did overlap in that each contained a pain factor. The issue in *Hutchinson* was whether under Labor Code section 4750[5] the second injury could be apportioned to the first injury even though the two injuries arguably involved different parts of the body. The court held that there could be apportionment since the issue was not whether different parts of the body were involved but whether the second injury had changed the injured's "capacity or ability to compete" in the open labor market differently from the first: "[T]he disability resulting from a subsequent injury should be compensable only to the extent that it can be said that the employee's earning capacity or ability to compete has been decreased from what it was immediately prior to the second injury. The computation of this figure cannot be determined by a mechanical application of a method of apportionment based upon whether the injury occurs to the same anatomical part of the body. It must come from a consideration of the nature of the disability caused by the injury. If successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 per cent assigned to 'total' disability. (See *Smith* v. *Industrial Acc. Com., supra,* 44 Cal.2d 364, 367 [282 P.2d 64].) But if the subsequent injury, even if to a different part

[5]Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

of the body, does not alter the earning capacity or ability to compete in the labor market it is not compensable. And if it does alter these factors, it should be compensable only to the extent of the alteration. (See *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 56 Cal.2d 681, 686 [16 Cal.Rptr. 359, 365 P.2d 415].)" (*Hutchinson, supra,* 59 Cal.2d 45, 53.)

Then came *Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 162. *Hegglin* involved a single industrial injury which resulted in back and knee disability and also disability from hepatitis. Both the hepatitis and the back independently limited the injured's work capacity. The board, however, described the factors of disability as follows: " 'Constant slight pain in the low back increasing after being on feet for 3 or 4 hours. [Par.] Right knee disability with slight pain after being on feet for 3 or 4 hours or in cold weather which gives way when walking on uneven terrain or in sand. Because of knee disability applicant should not walk on uneven terrain nor should he climb or descend stairs rapidly. [Par.] Slight to moderate fatigue from hepatitis limiting applicant to no heavy work or heavy exertion.' " (*Hegglin, supra,* 4 Cal.3d at p. 167.)

The board in *Hegglin* did not include any work restriction for the back even though it alone restricted the injured from heavy work since they were "persuaded that it would be erroneous to describe the disabilities arising from both the back injury and the hepatitis as precluding applicant from heavy work and suggesting that the two be added together." Thus, the board concluded that the combination of the two conditions resulted in no greater disability and being that the two conditions "overlapped" only one rating could be given to the extent of the overlap.

The Supreme Court in *Hegglin* noted that the back and the hepatitis were two distinct disabilities: "Here, it is clear that the injury to the back and the impairment of liver functions (caused by the hepatitis) were separate and individual physical abnormalities resulting from the single industrial accident. The record demonstrates that every witness treated the two factors separately. The injury to the spine and the destruction of liver cells and liver functions obviously involve impairment or abnormalities of separate portions of the anatomy. Furthermore, it is clear that the two factors impose separate limitations on petitioner's capacity to work. The back injury caused a weakness which precluded him from lifting heavy objects at any time; but the impairment of liver functions limited his capacity to work only after several hours of exertion. Because of his back disability he can no longer perform work requiring strenuous use of

the back. In addition, due to his hepatitis condition, he can hold only those jobs which do not require sustained physical exertion of any kind ·and which allow him to take unpredictable absences averaging three weeks per year. In sum, the impaired function of the back and the impaired function of the liver, with their respective disabling consequences mentioned above, were separate and individual abnormalities and hence separate factors of disability." (*Hegglin, supra,* 4 Cal.3d 162, 171-172.)

The court held that "[s]ince the back condition and the hepatitis condition were independent factors of disability, each of them should have been described in the request to the rating bureau." (*Hegglin, supra,* at p. 172.) The court rejected the application of *Hutchinson* since *Hutchinson* "dealt with the problem of overlapping disabilities caused by injuries sustained in two separate industrial accidents." (*Hegglin, supra,* at pp. 172-173.) The court explained that *Hutchinson* was the result of *Labor Code section 4750 which does not pertain to cases involving a single injury.* (*Ibid.*) The court then stated: "We hold that in cases involving multiple factors of disability caused by a single industrial accident the Board must, in any instructions it may direct to the rating bureau, fully describe each separate factor of disability. Any overlap of the factors of disability thus described is adequately taken into account, and the pyramiding of disabilities is properly avoided, by application of the multiple disabilities rating schedule." (*Hegglin, supra,* 4 Cal.3d at p. 174.)

Following *Hegglin* came *Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711 [129 Cal.Rptr. 161, 548 P.2d 361]. *Mercier* involved *successive* industrial injuries. The question in *Mercier* was whether *Hegglin,* notwithstanding the express language therein to the contrary, invalidated the holding in *Hutchinson.*

In *Mercier,* the Supreme Court affirmed an award apportioning a policeman's 75 percent permanent disability resulting from an industrially related heart disability to a prior industrial back injury for which the employee had been awarded a 34.5 percent permanent disability. In so doing the court stated at pages 715-716:

"Here, the injuries arose out of separate industrial events. In such case, apportionment turns on whether the second injury decreases the employee's earning capacity or his ability to compete in the open labor market in the same manner as the first. The fact that the injuries occur to two

different anatomical parts of the body while relevant, does not in itself preclude apportionment.

" . . . . . . . . . . . . . . . . . .

"The question of overlapping disabilities is one of fact—not of logic. The basic purpose of workers' compensation is to compensate diminished ability to compete in the labor market (Lab. Code, § 4660, subd. (a)) rather than to compensate every injury. Proper computation of overlapping disabilities—either partial or total—calls for determining the percentage of combined disability and then subtracting the percentage of disability due to the prior injury. (*Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 492 [62 Cal.Rptr. 757, 432 P.2d 365]; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal.2d 45, 53; *Subsequent Injuries Fund* v. *Workmen's Comp. Appeals Bd. (Royster)* (1974) 40 Cal.App.3d 403, 409-410 [115 Cal.Rptr. 204].) When all factors of disability attributable to the first injury are included in the factors attributable to the second, there is total overlap. We must conclude the rating properly was based on the combined injury. It is clear in this case that the injuries overlapped, and petitioner has failed to show that any disability factor in the first injury was not included in the instructions to the rating specialist." (Fn. omitted.)

The court in *Mercier* was very clear to point out that *Hutchinson* and *Hegglin* were both still the law but applied to different situations:

"*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162 [93 Cal.Rptr. 15, 480 P.2d 967], [here] does not lead to a contrary result. . . . This court held that when the injuries arise out of the same accident section 4750 is inapplicable and apportionment is therefore not required. The court distinguished *Hutchinson* noting that its rule applies to an entirely different situation. . . .

"As *Hegglin* pointed out, the distinction drawn between single and multiple accident cases is well-founded. When the two injuries arise out of the same industrial accident the policy underlying *Hutchinson* of not discouraging employers from hiring disabled persons is inapplicable. In such situation, the employer properly is made to bear responsibility for all injuries caused by one accident. When there have been two or more accidents, the policy of encouraging the hiring and retaining of disabled persons is best effected by application of the rule of apportionment enunciated in *Hutchinson.*" (*Mercier, supra,* 16 Cal.3d at p. 715.)

After *Mercier* the apparent rule was that *Hutchinson-Mercier* applied only in successive injuries to apportion "overlapping disabilities" and under *Hegglin* "overlapping factors of disability" involving disability from one injury was taken care of by the multiple disabilities table. Enter, however, *Mihesuah* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720 [127 Cal.Rptr. 688].

*Mihesuah* involved a single industrial injury involving respiratory and knee disability. The Board submitted to the permanent disability rating bureau the following factors of disability:

" 'CHEST: Post traumatic deformity, susceptibility to infection and decrease in respiratory function which in and of itself would limit applicant [petitioner] to light work.

" 'LEFT KNEE: Moderate to severe medial and lateral instability which requires wearing knee brace if applicant [petitioner] has to walk for any length of time and limits him to semi-sedentary work. He can do light lifting but little bending which involves the injured knee. He can do light work which involves some sitting or some standing but cannot place strains on knee such as those involved in lifting over 25 pounds, long periods of standing, and repetitive bending or stooping.' " (*Mihesuah, supra,* 55 Cal.App.3d at p. 723.)

The rating specialist determined that the rating instructions resulted in a 70 standard rating which adjusted to 74 percent for age and occupation. The rater on cross-examination stated the chest disability separately would be a 50 standard which would adjust to 56 percent, the knee disability would alone be a 60 standard which would adjust to 69 percent, and using the multiple disabilities table the 56 percent rating "combined" with the 69 percent rating would be 92 percent. The rater, however, arrived at a 70 standard rating (i.e., the rating before adjustment for age and occupation) by considering the overall disability. The rater noted the factors of disability involved two separate areas of disability and the factors suggested a minimum 60 standard for the knee and additional disability for the respiratory/chest condition. The board followed the rater's opinion on the matter.

The issue in *Mihesuah* was whether the rater was required to use the multiple disabilities table or could disregard it on the basis of his expert judgment. The court in *Mihesuah* noted that the multiple disabilities table itself stated it was only a "guide" and that *Hegglin* did

not require that the rating specialist's expert opinion yield to the multiple disabilities table:

". . . [I]t is clear that where 'overlap' exists between two factors of permanent disability caused by a single accident (which petitioner concedes to be the case here), and where a composite rating is requested of the Bureau, the rating which emerges rests upon the extent of 'overlap' as assessed by the rating specialist in the exercise of his expert judgment with the tabulated formula serving as a 'guide.' The *Hegglin* court did not mention this status of the multiple disability table as a 'guide.' Consequently, we do not read in its language as to 'overlap' (that '[a]ny overlap of the factors of disability thus [separately] described is adequately taken into account . . . by application of the multiple disabilities rating schedule') a statement that the specialist's judgment was to yield to the composite rating tabulated.

"We interpret the language, rather, that a 'factor of overlap is adequately taken into account' when the specialist enters the table after having rated the separate factors of disability according to his judgment as to each. The composite rating shown in the table by the juxtaposition of the two separate threshold ratings (95 percent in this case, shown in the table by 56 percent vis-à-vis 69 percent) operates as a ceiling upon the final rating which he may reach. The final rating, however, is the product of his further judgment, exercised within the limit imposed by the table, according to his assessment of the presence and degree of 'overlap': it is not *necessarily,* as petitioner contends, the composite figure shown in the table. Any other interpretation would utterly refute the administratively pronounced status of the table as a 'guide' to a 'final rating' which 'will be the result of consideration of the entire picture of disability and possibility of employability.'

"A more literal interpretation may be placed upon the *Hegglin* court's conjunctive—but distinct—statement that '. . . the pyramiding of disabilities is properly avoided . . . by application of the multiple disabilities rating schedule' to separately described factors of permanent disability caused by a single industrial accident. (*Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 162 at p. 174.) It is arithmetically possible that the sum of the factors' separate ratings might 'pyramid' beyond 100 percent, which is obviously impermissible where they have been caused by one accident. (Lab. Code, § 4658; CEB, § 15.25. See, and compare, *Pacific Gas & Elec. Co.* v. *Ind. Acc. Com.* (1954) 126 Cal.App.2d 554, 556-557 [272 P.2d 818] [successive accidents producing a cumulative 'rating' of

102½ percent]. See also *Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364, 367-368 [282 P.2d 64].) This possibility is 'avoided . . . by application of the multiple disabilities rating schedule' because the table thereof does not permit a composite rating in excess of 100 percent." (*Mihesuah, supra,* 55 Cal.App.3d 720, 729-730.)

The court in *Mihesuah* affirmed the rating adopted by the board since the rater had "found 'overlap' and assessed its degree." (*Mihesuah, supra,* 55 Cal.App.3d at p. 731.)[6]

### B. *The Application of Hegglin and Mihesuah to Morgan*

Morgan, in reality, contends that here the rater violated *Hegglin* in that she incorrectly applied *Hutchinson* and *Mercier.* State Fund argues that *Hegglin* is distinguishable and in any event *Mihesuah* permits the rater to do what she did here.

To distinguish *Hegglin,* State Fund argues: "Petitioner argues that the hypertension and the hernia should each be evaluated at 50% and then the Multiple Disability Tables applied. This application, however, results in an overlapping disability, as was pointed out by the Judge. Furthermore, nowhere in *Hegglin* is this rule applied. *Hegglin* stands for the principle that every disability must be fully described and that the Board's failure to follow its own rules will result in a reversal. *Hegglin* involved two disabilities, one to the back and another from hepatitis. The back disability resulted in a work preclusion, however, the hepatitis condition resulted in an impaired function of the liver which produced a disability quite distinct from a work preclusion. When the Board described both disabilities in terms of a work preclusion, the Court stated that they were not following their own rules. Nowhere does *Hegglin* advance the argument that is set forth by petitioner."

State Fund is correct that under *Hegglin* the board must fully describe the factors of disability but not correct in trying to argue that the back and hepatitis did not involve similar work restrictions. The above

---

[6]In the first district case of *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd. (Hurley)* (1977) 70 Cal.App.3d 599 [139 Cal.Rptr. 41], the injured tried to split up his single injury into three separate claims so he could get three separate awards and thereby get a total of 163 percent disability and not be limited to the ceiling of 100 percent disability for a single injury. *Hurley* held that since there was but one injury there could be but one award. The court annulled the separate awards and directed the board "[to] determine the percentage of . . . permanent disability by application of [the] multiple disabilities rating schedule *or in some other reasonable manner . . . .*" (Italics added.) (*Hurley, supra,* 70 Cal.App.3d 599, 607.)

discussion of *Hegglin* demonstrates that in *Hegglin* the back and hepatitis involved similar (though not identical) work restrictions.

The problem here is trying to reconcile *Hegglin,* which disapproved the use of *Hutchinson* in the single injury case, with *Mihesuah,* which would perhaps allow what the rater did here.

As this court noted in *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224 [145 Cal.Rptr. 22], part of the problem is that the term "overlapping disabilities" has been used in both the apportionment of successive injuries and the rating of multiple disabilities stemming from the same single industrial injury. "As one commentator has pointed out, using 'overlap' as being synonymous with 'pyramiding' has led to confusion. (See Mastoris, Survey of the Developments in the Law of Workers' Compensation in 1977 (printed materials prepared in conjunction with the educational seminar of Current Problem in Workers' Compensation presented by the Compensation Insurance Attorneys Association on December 3, 1977, in Los Angeles (Century City), California) p. 48.) For purposes of clarity, the term 'overlap' should only be used in the apportionment of successive injuries (the situation presented in *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal.2d 45; *Mercier* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 711; *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Gaba)* (1977) 72 Cal.App.3d 13 [139 Cal.Rptr. 802]), and the term 'pyramiding' or 'duplication' should be used to describe the situation of multiple disabilities flowing from a single industrial injury (the situation presented by *Hegglin, Mihesuah, State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd. (Hurley)* (1977) 70 Cal.App.3d 599 [139 Cal.Rptr. 41], and here). (*Mastoris, supra.*)" (*Franklin, supra,* 79 Cal.App.3d at p. 249, fn. 10.) Accordingly, we view the situation not as one of "overlap" but of "duplication" of the factors of disability.

From the record it clearly appears that the rater incorrectly utilized the principles of *Mercier* in arriving at the rating herein. The rater testified that she considered that the work restrictions for the hypertension and the hernia as totally "overlapping" under *Mercier.*[7] The rater thus arrived at

---

[7]The following portion of the transcript of the rater's testimony is pertinent here: "BY MR. LEWIS: Q. Is there any particular case law that causes you to rate the case the way you did? A. As I have stated, I did consider the question of overlap and I considered the total. If this is incorrect legal thought, well, his Honor can instruct me to do otherwise. Q. When you talk about overlap, you are talking about the *Mercier* case. Is that the concept? Are you familiar with that case? A. Yes, it was discussed in the *Mercier* case."

the rating by applying an incorrect "legal" principle. Accordingly, the present rating must be annulled.

 The question then becomes how the board and the rater should evaluate the rating instructions on remand.

The rater should first determine if the rating instructions treat the hernia and hypertension as "separate and independent" disabilities. (Whether the disabilities are in fact separate and independent is a matter for the appeals board as trier of fact to determine.) (*Hegglin, supra,* 4 Cal.3d 162, 171-172.) The hernia and hypertension appear to be separate and independent disabilities as each separately restricts Morgan to light work independently of the other and involve impairment or abnormalities of separate portions of the anatomy. (*Ibid.*)

The rater must then determine if the multiple disabilities table can apply to disabilities from hernia and hypertension. "The 'multiple disabilities table' applies only to 'disabilities involving *different members or organs* of the body (for instance disability in an arm, the back, and a leg.)' (Schedule for Rating Permanent Disabilities, *supra,* p. 81; see also Welch, *supra,* p. 43; *Mihesuah, supra,* 55 Cal.App.3d 720.) The table does not apply to 'multiple disability factors in a single extremity nor to bilateral disabilities (such as disability in both legs)' for which other procedures are followed to prevent 'duplication' or 'pyramiding' of the factors of the disability. (Schedule for Rating Permanent Disabilities, *supra,* p. 81; Welch, *supra,* pp. 13-14, 21-22, 28-29, 31.)" (*Franklin, supra,* 79 Cal.App.3d 224, 249-250.)

The rater then determines whether the multiple disabilities table in fact should be applied to eliminate the "duplication" of the factors of disability.

 As *Mihesuah* points out, the multiple disabilities table itself states it is only a "guide" and hence is not conclusive in determining the permanent disability rating in a case.[8] (*Mihesuah, supra,* 55 Cal.App.3d

---

[8]The text accompanying the multiple disabilities table states: "In rating multiple disabilities . . . , it is first necessary to compute the rating which would apply to each component disability as it would rate if it stood alone. These ratings are then arranged in order of magnitude. First, take the rating for the major disability. It is then assumed that the remaining capacity will equal 100% minus the rating for the major disability. Therefore, the rating for the secondary disability is applied to this remaining capacity and the resulting percentage added to the rating for the major disability. The combined rating for the two disabilities is this sum plus 10% of the rating for the secondary disability. . . .

720, 728-730; see also *Franklin, supra,* 79 Cal.App.3d 224, 249-250.) Consequently, the rater is not bound by the multiple disabilities table and may vary from the computation achieved by use of the multiple disabilities table and achieve a final rating as a result of "consideration of the entire picture of disability and possibility of employability." (*Mihesuah, supra*; Rating Schedule, p. 81; see fn. 8, *ante.*)

In our view the rater may not disregard the rating achieved by the multiple disabilities table unless she utilizes her expert opinion in so rating the disabilities. As indicated above, the following of inapplicable legal, as opposed to rating, principles does not permit departure from the multiple disabilities table. Thus, in order to justify the present rating the rater must be able to testify that based upon her expert opinion one who is restricted to light work because of hypertension and also restricted to light work because of a hernia is in fact no more disabled than if that individual (Morgan) had just one of the disabilities. The rater need not follow the multiple disabilities table if based upon "the entire picture of disability and possibility of employability" she finds the ultimate rating should differ. However, there must be some *factual* basis for departure from the multiple disabilities table rather than an arbitrary decision.[9]

Of course, the rater only computes percentage of disability based upon the factors of disability stated by the board in the rating instructions. (*Pence* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 48, 51 [45 Cal.Rptr. 12, 403 P.2d 140]; *Allied Comp. Ins. Co.* v. *Ind. Acc. Com.* (1961) 57 Cal.2d 115 [17 Cal.Rptr. 817, 367 P.2d 409].) Accordingly, the board may find it necessary to make findings of fact based upon the evidence presented by the parties on the effect of the multiple work restrictions on Morgan and include them in the rating instructions so that the rater may be able to correctly evaluate the problem of "duplication" of the factors of disability.

Final rating may not exceed 100%. *The table on the following page can be used instead of performing the computation in each individual case.*

*"The result obtained by such calculation is not necessarily to be adopted as the final rating for combined disabilities but should serve as a guide only. The final rating will be the result of consideration of the entire picture of disability and possibility of employability."* (Italics added.) (Schedule for Rating Permanent Disabilities (Rating Schedule) p. 81.)

[9]One vice of giving the rater absolute freedom to depart from the multiple disabilities table is that individual injureds may thereby receive different ratings even though the factors of disability are identical. This would run contrary to one justification for the Rating Schedule—uniformity of treatment. (See 1 Hanna, *supra,* § 11.01[1].)

If some problem exists in utilizing the multiple disabilities table in this type of case, the Administrative Director of the Division of Industrial Accidents should then exercise his authority under Labor Code section 4660, subdivision (b), and take steps to amend the rating schedule.

We do not view our opinion herein as conflicting with *Mihesuah*. In *Mihesuah* the issue was whether the rater can disregard the multiple disabilities table and recommend a rating based upon his or her judgment; *Mihesuah* held that the rater could do so and we fully agree. Our decision reaches the question of how the rater can properly exercise her "independent judgment"—an issue which the court in *Mihesuah* did not reach in detail.

We wish to emphasize that we deal here with problems in the rating of multiple factors of disability stemming from a *single* injury and *not* successive injuries. The discussion of the procedure for rating Morgan's disability herein has no direct application to apportionment of successive injuries.

## III

### DISPOSITION

The present permanent disability rating and the permanent disability award based thereon are annulled. The cause is remanded to the board for such further proceedings as are indicated and consistent with the views expressed herein.

Cobey, Acting P. J., and Potter, J., concurred.