[No. B024937. Second Dist., Div. Six. Oct. 14, 1987.]

GAIL PEREIRA, Petitioner v.
WORKERS' COMPENSATION APPEALS BOARD, R. BURKE
CORPORATION et al., Respondents.

**COUNSEL**

Spatafore & Wheeler, Spatafore, Wheeler & Beaton and Charles T. Wheeler for Petitioner.

Richard W. Younkin, Charles E. Finster, William B. Donohoe, Allen, Rhodes & Sobelsohn and James C. Shipley for Respondents.

**OPINION**

STONE, P. J.—In this proceeding we review a decision of respondent Workers' Compensation Appeals Board (Board) rescinding an order by the Rehabilitation Bureau (Bureau) requiring payment of retroactive vocational-rehabilitation temporary-disability indemnity (VRTD). We conclude retroactive VRTD may be awarded to a qualified injured worker for a period prior to presentation of a prima facie case of qualified injured worker status.

On September 29, 1981, applicant sustained an industrial injury to her left knee in the course of her employment as a construction laborer by respondent employer, R. Burke Corporation. She had previously sustained nonindustrial injuries to her left knee. Her treating physician, Doctor Gjerdrum, released applicant to return to work on January 12, 1982. She did not return to her job with respondent employer, however, because she believed her knee was too weak. In February 1982 she had knee surgery.

On March 26, 1982, applicant, represented by counsel, filed an application for workers' compensation benefits, alleging in essence that the parties had a disagreement regarding various issues including vocational rehabilitation.[1] The record does not reflect whether applicant ever filed a formal request for vocational rehabilitation with the Bureau.

On July 22, 1982, Doctor W. Gordon Smith reported applicant was temporarily totally disabled. He attributed at least 80 percent of the disability to the industrial injury and opined applicant would not be permanent and stationary for at least six months. Approximately four months later, however, Doctor Michael Baratta opined that applicant was permanent and stationary and could return to her former work without restriction.

On March 22, 1983, Doctor James L. Strait, the Board-appointed independent medical examiner, reported applicant was permanent and stationary and concluded applicant would not qualify for vocational rehabilitation unless her job required continuous squatting. Applicant had informed Doctor Strait a large amount of squatting was required.

On July 7, 1983, Doctor Strait testified applicant needs to avoid squatting. He noted applicant had complained her knee became tired and shaky after a long hike on rough terrain. Doctor Strait explained he was unfamiliar with applicant's duties and would need to review a job analysis before determining whether applicant qualified for vocational rehabilitation.

After reviewing a job analysis provided by respondent employer, Doctor Strait reported on August 8, 1983, that applicant did not qualify for vocational rehabilitation. He noted a fair amount of kneeling was required and found applicant could kneel without significant difficulty. He explained squatting was the only activity to which applicant had stated she could not return and concluded that according to the job analysis squatting was "not really required."

The workers' compensation judge (WCJ) subsequently approved a compromise and release settling temporary disability indemnity through March 22, 1983, but not mentioning VRTD.

On February 16, 1984, Doctor Strait testified he did not examine applicant after receiving the job description. Doctor Strait stated he would need

---

[1] Applicant alleged the parties had a disagreement regarding "L.C.§. [sic] 139.5."

Labor Code section 139.5, subdivision (c) provides: "When a qualified injured worker chooses to enroll in a rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be."

to reexamine applicant to confirm or deny whether prolonged kneeling, climbing ladders or long flights of stairs, and walking on uneven ground were medically contraindicated. On February 22, 1984, applicant requested that the Bureau appoint Doctor Strait as independent medical examiner. Her request was granted.

Doctor Strait reported on August 13, 1984, that he had reexamined applicant and applicant is a qualified injured worker. He determined that squatting for more than three minutes, prolonged kneeling, prolonged walking on uneven ground, and climbing in and out of ditches are medically precluded, and he noted some of those activities were required in the job with respondent employer.

In November 1984 Doctor Strait testified the job analysis indicated applicant might have to squat or kneel for an entire day while laying pipe. In his November 1984 testimony Doctor Strait concluded applicant was a qualified injured worker when he first examined her in March 1983.

In its May 1, 1985, decision and order, the Bureau found applicant is a qualified injured worker and determined she is entitled to retroactive VRTD for the March 23, 1983, to August 15, 1984, period.

Affirming the Bureau's May 1, 1985, decision and order, the WCJ found applicant is entitled to retroactive VRTD because she is a qualified injured worker.

In its petition for reconsideration, respondent insurer stated "[d]efendant . . . provided notice to the applicant and the Rehabilitation Bureau regarding rehab, apparently on 5-20-83 and again on 7-7-83 (see rehabilitation file), thus satisfying the requirement of [California Administrative Code, title 8, chapter 4.5,] section 10004 [rule 10004]."[2] A copy of the Bureau's file

---

[2] Rule 10004 provides in pertinent part: "(b) The employer shall report disability status to the Bureau: [¶] (1) Immediately upon knowledge that the employee is unlikely to be able to return to his or her usual and customary occupation, or occupation at the time of injury, on a permanent basis; or [¶] (2) Immediately following 180 aggregate days of total disability for cases not previously reported under (1) above.

"If the employee's condition does not permit determination of qualified injured worker status, at the time of reporting under (b) above, the employer shall indicate on its report a reasonable date when the determination will be reported.

"(c) Upon submission of the initial disability status report required by subsection (b), the employer also shall advise the employee of his or her potential right to vocational rehabilitation services. The notice need not be in any particular form but shall be in writing and shall contain: [¶] (1) a full explanation of the vocational rehabilitation benefit,

"(2) instructions as to how the employee may apply for rehabilitation services and advice that a delay in application may affect the employee's rights to rehabilitation benefits,

was not presented to the WCJ, the Board, or this court, and the record does not reflect the content of the letters to which the insurer referred in its petition for reconsideration. The record also fails to indicate when the employer and insurer received Doctor Strait's March 22, 1983, report.

In his report on reconsideration, the WCJ concluded there should be no retroactive VRTD because until August 13, 1984, there was no prima facie case of entitlement to vocational rehabilitation. He stated the employer and insurer followed all the proper rehabilitation procedures.

In its decision after reconsideration, the Board determined applicant is not entitled to retroactive VRTD for the period of March 23, 1983, to August 13, 1984, because a prima facie case of entitlement to vocational rehabilitation did not exist during that period. The Board expressly declined to determine whether applicant requested vocational rehabilitation. The Board concluded the insurer did not breach its duty to notify applicant concerning her right to participate in rehabilitation because applicant was represented by counsel throughout the proceedings and was aware of her right to participate in vocational rehabilitation at least as early as March 1982 when she filed her application. The Board did not address the issue whether the employer and insurer breached their duty to notify the Bureau regarding applicant's disability status pursuant to subdivision (b) of rule 10004.

 Applicant contends a qualified injured worker may be awarded retroactive VRTD for a period during which there was no prima facie evidence of qualified injured worker status. Respondents contend to the contrary.

 The history of Labor Code section 139.5 indicates a legislative intent to encourage employees to enroll in rehabilitation programs and to place on employers the primary duty of promptly making rehabilitation services available. (*Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 628 [170 Cal.Rptr. 32, 620 P.2d 618]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 637 [211 Cal.Rptr. 683].)

"(3) advice that the employee's application for such benefit shall not affect his or her rights to other workers' compensation benefits,

"(4) notice of the employee's right to participate with the employer in the selection of a rehabilitation counselor,

"(5) advice that entitlement to rehabilitation benefits may not normally be 'settled' or otherwise converted to cash payments.

". . . . . . . . . . . . . . . . .

"(d) If, in the employer's opinion, the employee is not a qualified injured worker, the report required by subsection (b) shall include all medical and/or vocational reports which address the nature and extent of the employee's disability, work preclusions and/or status as a qualified injured worker. . . ."

Ordinarily, an employer has the duty to provide VRTD to a qualified injured worker from the time the employee chooses vocational rehabilitation. (Lab. Code, § 139.5; Cal. Admin. Code, tit. 8, ch. 4.5, § 10016 [rule 10016], subd. (a); see *Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 633; *San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 635, 637 [170 Cal.Rptr. 40, 620 P.2d 626].) However, when the employer breaches its duty to promptly notify the Bureau regarding disability status or its duty to promptly notify the injured employee regarding vocational rehabilitation pursuant to rule 10004, liability for VRTD accrues from the moment of breach. (Rule 10016, subd. (b); *Webb, supra,* at pp. 630-632; see *San Diego Transit Corp., supra,* at p. 637.)[3]

■ The Board erred in concluding applicant was not entitled to VRTD until a prima facie case was established. If the employee is a qualified injured worker, VRTD should not be delayed even if qualified injured worker status is disputed or not yet supported by prima facie evidence. (See *San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at pp. 637-638.) "[Labor Code section 139.5] requires only that the employee be a qualified injured worker, not that [the employee] be formally adjudicated as such." (*Id.,* at p. 637.)

Although respondents correctly note that an employee who is ultimately determined not to be a qualified injured worker is not entitled to retroactive VRTD for a period during which no prima facie evidence of qualified injured worker status was presented (*Blunt* v. *Southern California Permanente Medical Group* (1984) 49 Cal.Comp.Cases 678, 683-685, en banc; see *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd., supra,* 165 Cal.App.3d at pp. 636-641), respondents' reliance on the prima facie evidence doctrine is misplaced since in the present case applicant was ultimately determined to be a qualified injured worker. (*San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at pp. 637-638; see *Blunt* v. *Southern California Permanente Medical Group, supra,* 49 Cal.Comp.Cases at p. 682.)

Because the Board erroneously concluded the absence of a prima facie case of qualified injured worker status precluded entitlement to retroactive VRTD, remand is necessary to enable the Board to determine when entitle-

---

[3] Rule 10016 provides: "(a) Entitlement to rehabilitation temporary disability indemnity payments shall commence on the date an employee, entitled to receive rehabilitation services, requests rehabilitation services. Such payments shall continue during entitlement to vocational rehabilitation services unless the Rehabilitation Bureau orders otherwise.

"(b) Where the employer or insurer has breached its duty to comply with the reporting requirements of Section 10004 and/or failed to advise the employee of his/her rights to vocational rehabilitation services, entitlement to such payments shall commence from the date of such breach."

ment to VRTD commenced pursuant to rule 10016. To accurately determine the appropriate starting date for VRTD, the Board must review the Bureau's file in this matter.

■ We note the Board cited no authority supporting its conclusion that an employee's representation by counsel necessarily relieves the employer of the duty to notify the employee regarding rehabilitation. Neither rule 10016 nor *Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d 621 limits the notification and reporting duties to situations in which the employee is unrepresented by counsel. Such a limitation would contravene the legislative intent to place on employers the primary duty of promptly making rehabilitation services available.

The Board's decision denying retroactive VRTD is annulled, and the matter is remanded for proceedings consistent with this opinion.

Gilbert, J., and Abbe, J., concurred.

The petition of respondents R. Burke Corporation and Beaver Insurance Company for review by the Supreme Court was denied January 6, 1988.