[No. B171921. Second Dist., Div. Eight. Mar. 30, 2005.]

JAMES GREEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD OF THE STATE OF
CALIFORNIA and CITY OF COMPTON, Respondents.

Counsel

Cantrell, Green, Pekich, Cruz & McCort and Wayne McCort for Petitioner.

Remcho, Johansen & Purcell, James C. Harrison, Margaret R. Prinzing; and William A. Herreras for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Bagby, Gajdos & Zachary and Larry Preece for Respondent City of Compton.

Finnegan, Marks, Hampton & Theofel, Michael A. Marks and Ellen Sims Langille for California Workers' Compensation Institute as Amicus Curiae on behalf of Respondent City of Compton.

Rockard J. Delgadillo, City Attorney, Valentin F. Dinu, Managing Attorney, and William W. Koepcke, Deputy City Attorney, for the City of Los Angeles as Amicus Curiae on behalf of Respondent City of Compton.

Opinion

**RUBIN, J.—**

## INTRODUCTION

Petitioner, James Green, claimed work injuries sustained during 1987 to 2000 as a police officer for respondent City of Compton (City). Based on reports by agreed medical examiners, City provided workers' compensation and later stipulated to benefits. Green also sought multiple increases of compensation for unreasonable delay under former Labor Code section

5814.[1] In November of 2003, respondent Workers' Compensation Appeals Board (WCAB) awarded a single increase in compensation.

Green petitioned for writ of review. He contends there was unreasonable delay of compensation following both the agreed medical examiner reports and City's stipulation to benefits, thus requiring multiple increases in compensation. City answered that any delay was part of continuous conduct, and, thus, the WCAB correctly awarded a single increase of compensation.

We requested briefing on the application of Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill 899), which became effective April 19, 2004, and new section 5814.[2] Green responded that former section 5814 applies because it remained operative until June 1, 2004, was not repealed until January 1, 2005, and new section 5814 applies prospectively to subsequent unreasonable delay under section 47 of Senate Bill 899.[3] City contends that former section 5814 is inoperative, and new section 5814 applies to all

---

[1] In 2003, former Labor Code section 5814 provided in relevant part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision, or award shall be increased by 10 percent. Multiple increases shall not be awarded for repeated delays in making a series of payments due for the same type or specie of benefit unless there has been a legally significant event between the delay and the subsequent delay in payments of the same type or specie of benefits."

All further code references are to the Labor Code.

[2] Section 42, subsection (a) of Senate Bill 899 restates former section 5814. Section 42, subsection (b) of Senate Bill 899 adds: "[Former section 5814] shall become inoperative on June 1, 2004, and, as of January 1, 2005, is repealed, unless a later enacted statute, that becomes operative on or before January 1, 2005, deletes or extends the dates on which it becomes inoperative and is repealed."

Section 43 of Senate Bill 899, which is hereafter referred to as new section 5814, provides in relevant part:

"Section 5814 is added to the Labor Code, to read: [¶] (a) When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the amount of the payment unreasonably delayed or refused shall be increased up to 25 percent or up to ten thousand dollars ($10,000), whichever is less. In any proceeding under this section, the appeals board shall use its discretion to accomplish a fair balance and substantial justice between the parties. [¶] . . . [¶] (h) This section shall apply to all injuries, without regard to whether the injury occurs before, on, or after the operative date of this section. [¶] (i) This section shall become operative on June 1, 2004."

Thus, under former section 5814, increases in compensation were (1) based on unreasonable delay in any part of the specie of benefit awarded; and (2) computed at the rate of 10 percent of the specie of benefit awarded. The new section provides that increases are (1) based on the actual amount of the unreasonably delayed compensation, and (2) are computed at the rate of up to 25 percent of that compensation, with a maximum of $10,000.

[3] Section 47 of Senate Bill 899 states: "The amendment, addition, or repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act, regardless of the date of injury, unless otherwise specified, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision or award of the Workers' Compensation Appeals Board."

injuries in pending cases under subdivision (h). The parties also dispute whether new section 5814 eliminates multiple increases in compensation.

We conclude that former section 5814 became inoperative and unenforceable on June 1, 2004, and new section 5814 became applicable to all injuries in then pending cases, including Green's. Although section 47 of Senate Bill 899 provides that the legislation applies prospectively to pending cases, new section 5814, subdivision (h) (section 5814(h)) is an exception to Senate Bill 899's general rule of prospective application. We further conclude that compensation based on an agreed medical examiner opinion and a stipulation to benefits may result in multiple increases in compensation under new section 5814 if compensation after both events is unreasonably delayed. Finally, we conclude Green has waived his claim for earlier vocational benefits. Accordingly, the WCAB's decision is affirmed in part and annulled in part, and the matter is remanded for the WCAB to determine whether there were unreasonable delays and whether multiple increases of compensation should be awarded under the new statute.

## FACTUAL AND PROCEDURAL BACKGROUND

Green claimed orthopedic, psychiatric and internal work injuries from 1987 to May 30, 2000, and additional orthopedic injuries on February 14, 1994, and January 1, 1997. He filed applications with the WCAB and indicated that vocational rehabilitation was an issue.

City denied benefits, and Green and City submitted the medical issues to Stephen Weiss, M.D., and Robert Faguet, M.D., Ph.D., as agreed medical examiners. In a report dated December 10, 2001, Dr. Weiss indicated the claimed orthopedic injuries were industrial. Dr. Weiss recommended work restrictions, medical treatment and vocational rehabilitation. In a report dated July 22, 2002, Dr. Faguet concluded Green sustained psychiatric injury at work. Dr. Faguet also agreed with a December 18, 2000, report of treating physician, Alfred Bloch M.D., Ph.D., that Green had been temporarily disabled and was permanent and stationary.[4] Dr. Faguet recommended work restrictions and vocational rehabilitation, as had Dr. Bloch. Following the medical reports of Drs. Weiss and Faguet, City paid compensation.

*Green Petitions for Increased Compensation*

Green petitioned for increased compensation based on unreasonable delay under former section 5814, and the parties proceeded to a mandatory

---

[4] A permanent and stationary status is achieved when "the employee has reached maximal medical improvement . . . his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 10152.)

settlement conference and trial. On March 4, 2003, Green and City entered into Stipulations with Request for Award (Stipulation), which was approved as an award by the workers' compensation administrative law judge (WCJ). The parties stipulated to the claimed injuries, 58 percent permanent disability with indemnity payable at $170 a week beginning December 18, 2000, and medical care.

City continued to pay compensation. Green alleged additional unreasonable delay of compensation, which City denied. The parties proceeded to trial, and the matter was submitted on the record without testimony.

The WCJ awarded temporary disability indemnity from May 31, 2000, to December 18, 2000, permanent disability indemnity from December 18, 2000, to December 10, 2001, and vocational rehabilitation benefits payable at the temporary disability rate from December 10, 2001, and continuing.[5] The WCJ also awarded a 10 percent increase in compensation under former section 5814 against temporary and permanent disability indemnity, medical treatment and vocational rehabilitation benefits. In its opinion, the WCJ explained that City failed to provide benefits as required by the opinions of the agreed medical examiners and Stipulation.

*Green Petitions for Reconsideration*

Green petitioned the WCAB for reconsideration. He argued that the reports of the agreed medical examiners and the Stipulation were separate legally significant events under *Christian v. Workers' Comp. Appeals Bd.* (1997) 15 Cal.4th 505 [63 Cal.Rptr.2d 336, 936 P.2d 115] (*Christian*), thus requiring separate increases in compensation under former section 5814.[6] Green also claimed that he was entitled to vocational rehabilitation benefits beginning December 18, 2000 (one year earlier than the WCJ found), which is the date his condition became permanent and stationary.

In the report to the WCAB on reconsideration, the WCJ explained that unreasonable delay in paying compensation, whether pursuant to the agreed

---

[5] Former section 4642, subdivision (a), provided in part: "If the employer fails . . . to commence vocational rehabilitation service in a timely manner as required by Section 4637, or otherwise causes any delay in the provision of vocational rehabilitation services, the full maintenance allowance shall be paid in its entirety by the employer, including the amount payable under paragraph (2) of subdivision (d) of Section 139.5, for the period of the delay." (As amended by Stats. 1993, ch. 121, § 50, p. 1297.)

[6] In *Christian*, a single erroneous decision not to pay benefits, followed by 11 subsequent demands for payment, resulted in a single increase in compensation under former section 5814. Although ruling a single increase applied in that case, our Supreme Court stated multiple increases may be available when there are separate, legally significant unreasonable delays. (*Christian, supra,* 15 Cal.4th at p. 511.)

medical examiners or Stipulation, is a single continuous act under *Christian*. In addition, none of the reporting physicians prior to the agreed medical examiners indicated Green required vocational rehabilitation.

On November 3, 2003, the WCAB adopted the WCJ's report and decision, and denied Green reconsideration.

*Green Petitions for Writ of Review*

Green petitioned for writ of review and contends that compensation indicated by agreed medical examiners which is unreasonably delayed is a basis for increased compensation under *Berry v. Workmen's Comp. App. Bd.* (1969) 276 Cal.App.2d 381 [81 Cal.Rptr. 65] (*Berry*), and is a legally significant event, separate from the Stipulation, under *Christian*. Since liability was established by the reports of Drs. Weiss and Faguet, and then again by the Stipulation, the WCAB should have awarded multiple increases in compensation. Green also contends that since he was ultimately determined to be entitled to vocational rehabilitation, the WCAB's requirement of earlier prima facie evidence of vocational rehabilitation is contrary to *Pereira v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 1 [241 Cal.Rptr. 302] (*Pereira*).[7]

*The Court Requested Additional Briefing*

On April 19, 2004, after the petition and answer had been filed, Senate Bill 899 was enacted. This court requested additional briefing regarding the following questions:

1. Do the Labor Code amendments under Senate Bill 899 affect the issues raised in the petition for writ of review, e.g., vocational rehabilitation benefits beginning December 18, 2000, and additional penalties under Labor Code section 5814? If so, please address how the issues are affected by the new law.

2. Did petitioner waive his arguments supporting entitlement to vocational rehabilitation benefits beginning December 18, 2000, by not raising the arguments before the Workers' Compensation Appeals Board?[8]

---

[7] *Pereira* held that vocational rehabilitation is owed from the date requested, if the employee is ultimately found entitled to the benefit, even before prima facie evidence of need.

[8] We have also received amicus curiae briefs by the California Applicants' Attorneys Association (CAAA), an association of attorneys representing injured workers, filed on behalf of Green; and by the California Workers' Compensation Institute (CWCI), whose members include insurers and self-insured employers, and by the City of Los Angeles, filed on behalf of City.

We first address the appropriate standard of appellate review and then general principles of statutory construction that govern our analysis. We then discuss whether new section 5814 applies to this case, whether it prohibits multiple increases in compensation previously available under *Christian*, and, finally, whether Green is entitled to additional vocational rehabilitation benefits.

## DISCUSSION

### I. Standards of Review

■ This case requires us to interpret and apply applicable statutory provisions and new legislation. Courts of review interpret governing statutes de novo, even though the WCAB's construction is entitled to great weight unless clearly erroneous.[9] Factual findings supported by substantial evidence are affirmed;[10] however, reviewing courts are not bound to accept factual findings that are erroneous, unreasonable, illogical, improbable, or inequitable when viewed in light of the entire record and the statutory scheme.[11]

### II. Principles of Statutory Construction

■ Generally, in interpreting legislation, we first look to the plain or ordinary meaning of the language used to determine the Legislature's intent, unless the language is uncertain.[12] Every word and clause is given effect so that no part or provision is useless, deprived of meaning, or contradictory.[13] If more than one interpretation is reasonable, the language is interpreted consistent with the purpose of the statute and the statutory framework as a whole, using rules of construction or legislative history in determining legislative intent.[14]

---

[9] *Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486]; *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].

[10] *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26] (*Western Growers*).

[11] *Western Growers, supra,* 16 Cal.App.4th at page 233; *Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537].

[12] *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*Dubois*); *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] (*Moyer*).

[13] *DuBois, supra,* 5 Cal.4th at page 388; *Moyer, supra,* 10 Cal.3d at page 230.

[14] *DuBois, supra,* 5 Cal.4th at pages 387–388, 393; *Moyer, supra,* 10 Cal.3d at page 230.

When new legislation repeals statutory rights, the rights normally end with repeal unless vested pursuant to contract or common law.[15] In workers' compensation, where rights are purely statutory and not based on common law,[16] repeal ends the right,[17] absent a savings clause.[18] Rights end during litigation if statutory repeal occurs before final judgment; by definition there is no final judgment if an appeal is pending.[19] There is no injustice if statutory rights end before final judgment because parties act and litigate in contemplation of possible repeal.[20]

When new legislation amends or adds statutory rights, the legislation is applied prospectively unless it is clear from statutory language or extrinsic sources that the Legislature intended retroactive application.[21] If the Legislature's intent is unclear, prospective application is mandated.[22] A statute is

---

[15] *Governing Board v. Mann* (1977) 18 Cal.3d 819 [135 Cal.Rptr. 526, 558 P.2d 1] (*Governing Board*) (authority to dismiss teacher for marijuana possession under Education Code ended by repeal implied under Health and Safety Code enactment during appeal); *Southern Service Co., Ltd. v. Los Angeles* (1940) 15 Cal.2d 1 [97 P.2d 963] (*Southern Service*) (law allowing taxpayer refund repealed during appeal ends right); *People v. Bank of San Luis Obispo* (1910) 159 Cal. 65, 76–78, 80–81 [112 P. 866] (judgment final after appeal despite subsequent repeal of statute and appeal of denial of motion for new trial).

[16] *Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997 [229 Cal.Rptr. 494] (*Graczyk*). In *Graczyk*, the Court of Appeal ruled that the Legislature intended an amendment to section 3352, which excluded student athletes as employees, to apply retroactively to the prior date of injury. Where a right depends on statute and not common law as in workers' compensation, repeal of the statute destroys the right unless reduced to final judgment or the statute has a savings clause. (*Graczyk* at pp. 1002–1003, 1006–1007.) Application is justified because statutory remedies are pursued with the realization that the Legislature may abolish the right to recovery at any time. (*Id.* at p. 1007.) Although the law in force at the time of injury normally controls in workers' compensation, the Legislature clarified that the amendment is " 'declaratory of the . . . existing law' " and the " 'provisions shall apply to all claims filed for injuries occurring prior to the effective date of this act.' " (*Id.* at pp. 1005–1006.)

[17] *Southern Service, supra,* 15 Cal.2d at pages 7–8; *People v. Bank of San Luis Obispo, supra,* 159 Cal. at page 67; *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 489 [6 Cal.Rptr.2d 60] (*Beckman*); *Graczyk, supra,* 184 Cal.App.3d at pages 1006–1007.

[18] Section 4 is a savings clause. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206–1208 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*) [Proposition 51 is prospective unless clear legislative intent retroactive].) Section 4 states: "No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible."

[19] *Governing Board, supra,* 18 Cal.3d at pages 829, 831; *People v. Bank of San Luis Obispo, supra,* 159 Cal. at pages 77, 79–80; *Beckman, supra,* 4 Cal.App.4th at pages 488–489.

[20] *Graczyk, supra,* 184 Cal.App.3d at page 1007.

[21] *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (*McClung*) (application of Supreme Court interpretation of prior law that coemployee is not personally liable for sexual harassment cannot be changed by an amendment imposing liability, despite provision that the amendment is clarification of existing law, absent clear indication retroactive application intended); *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840–841, 844 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*) (repeal of

said to apply "retroactively" when legal consequences of past regulated conduct are affected.[23] A newly enacted statute that affects only procedure and not substantive rights is said to be "prospective" when it is applied to procedures that subsequently arise in litigation.[24]

## III. Although New Section 5814 Changes Substantive Rights, It Applies Retroactively to the Present Case

### A. New Section 5814 Effects a Substantive Change in Compensation

If new section 5814 is only a procedural change, application may be properly characterized as prospective under *Pebworth* since a final determination of Green's pending claims has yet to be made. Under that analysis, we would then not need to determine whether the Legislature intended to give *retroactive* application to a *substantive* statute. Amicus curiae CWCI contends that new section 5814 is merely a procedural change in calculation of increased compensation, while Green and amicus curiae CAAA argue that substantive rights are affected.

---

tobacco industry immunity prospective absent clear indication by Legislature retrospective application intended); *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159] (*Aetna Casualty*); *Callet v. Alioto* (1930) 210 Cal. 65, 67–68 [290 P. 438] (*Callet*) (guest statute not retroactive since ordinary negligence action by passenger against driver is vested right based on common law); *Graczyk, supra,* 184 Cal.App.3d at pages 1005–1008.

[22] *Myers, supra,* 28 Cal.4th at page 841; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288 [279 Cal.Rptr. 592, 807 P.2d 434] (procedural part· of Proposition 115 may be applied prospectively to trial for crime committed before measure approved).

[23] *Evangelatos, supra,* 44 Cal.3d at pages 1207–1208; *Aetna Casualty, supra,* 30 Cal.2d at page 392. In *Aetna Casualty,* the Supreme Court explained that "a statute changing the measure or method of computing compensation for disability or death is given retrospective effect when applied to disability or death resulting from an injury sustained before the effective date of the statute." (*Aetna Casualty,* at pp. 392–393.) Such statutes are not applied retroactively unless clearly intended by the Legislature. (*Ibid.*) The Supreme Court ruled that, because the law in force on the date of injury normally determines the right of recovery in workers' compensation, a Labor Code amendment after the date of injury which increases indemnity is substantive and should be applied prospectively. Statutes that change remedies or procedures apply to pending cases, but application is considered prospective. (*Id.* at p. 394.) See also *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 1028, 1031 [149 Cal.Rptr. 880] (repeal of voluntary vocational rehabilitation requiring employer to provide benefit is substantive and not retroactive to date of injury before amendment).

[24] *Aetna Casualty, supra,* 30 Cal.2d at page 394; *Rosefield Packing Co. v. Superior Court* (1935) 4 Cal.2d 120, 122–123 [47 P.2d 716] (*Rosefield Packing*); *Pebworth v. Workers' Comp. Appeals Bd.* (2004) 116 Cal.App.4th 913, 918 [10 Cal.Rptr.3d 832] (*Pebworth*) (Labor Code amendment after date of injury allowing settlement of vocational rehabilitation applies prospectively as procedural rather than substantive change in calculating liability); *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1977) 71 Cal.App.3d 133 [139 Cal.Rptr. 410] (procedural amendment after date of injury allowing employee instead of employer to choose treating physician applies).

■ We agree with Green and CAAA that new section 5814 significantly affects substantive rights and liabilities. Strictly procedural statutes affect principally the processes by which a case is litigated in a judicial or administrative forum; in some instances they implicate enumerated remedies.[25] Although a new way of calculating compensation superficially suggests a procedural or remedial change, our Supreme Court has rejected such a facile analysis. ■ It has instead held "changing the measure or method of computing compensation" changes substantive rights.[26] In *Aetna Casualty*, the amendment in question increased the compensation in effect at the time of injury. The Supreme Court held that the amendment was substantive in nature. "[The amendment] increased the amount of compensation above what was payable at the date of the injury, and to that extent it enlarged the employee's existing rights and the employer's corresponding obligations. The amendment is therefore clearly substantive in character." (*Aetna Casualty, supra*, 30 Cal.3d at p. 392.)[27]

■ The statutory scheme before us is far more comprehensive in affecting substantive rights than a change in calculation. New section 5814 also caps increased compensation at $10,000, limits increased compensation to the actual amounts unreasonably delayed and by subtracting payments under section 4650,[28] and eliminates increased compensation if a self-imposed penalty is paid within 90 days[29] or timely treatment has been authorized and the dispute only concerns medical billing.[30] Since these provisions of new section 5814 substantially reduce or in some instances eliminate the right to increased compensation, we conclude that the provisions are fundamentally

---

[25] See *Aetna Casualty, supra*, 30 Cal.2d at page 394; *Pebworth, supra*, 116 Cal.App.4th at pages 917–918.

[26] See *Aetna Casualty, supra*, 30 Cal.2d at pages 392–393.

[27] In *Aetna Casualty*, the Supreme Court refused to apply the amendment to the case before it because the Legislature had not intended retroactive application. (*Aetna Casualty, supra*, 30 Cal.2d at pp. 395–396.)

[28] New section 5814, subdivision (d), states: "The payment of any increased award pursuant to subdivision (a) shall be reduced by any amount paid under subdivision (d) of Section 4650 on the same unreasonably delayed or refused benefit payment."

Section 4650, subdivision (d), provides: "If any indemnity payment is not made timely as required by this section, the amount of the late payment shall be increased 10 percent and shall be paid, without application, to the employee . . . ."

[29] New section 5814, subdivision (b), states: "If a potential violation of this section is discovered by the employer prior to an employee claiming a penalty under this section, the employer, within 90 days of the date of the discovery, may pay a self-imposed penalty in the amount of 10 percent of the amount of the payment unreasonably delayed or refused, along with the amount of the payment delayed or refused. This self-imposed penalty shall be in lieu of the penalty in subdivision (a)."

[30] New section 5814, subdivision (e), provides: "No unreasonable delay in the provision of medical treatment shall be found when the treatment has been authorized by the employer in a timely manner and the only dispute concerns payment of a billing submitted by a physician or medical provider as provided in Section 4603.2."

substantive in nature.[31] Therefore, we must determine whether applying these provisions to the present case would be a retroactive application, and, if so, whether that is what the Legislature intended.[32]

## B. *The Legislature Intended New Section 5814 to Apply Retroactively*

### 1. *New section 5814(h) states the Legislature's intent.*

New section 5814(h) provides that the "section shall apply to all injuries, without regard to whether the injury occurs before, on, or after the operative date" of June 1, 2004. City and CWCI argue that this language could not more plainly state the Legislature's mandate that the section is to apply to all injuries, and that includes Green's, which occurred before the statute's operative date.[33] Green and CAAA counter that the language refers only to "all" injuries where the *unreasonable delay* in compensation occurs after June 1, 2004, the operative date of the statute. The argument continues that it matters not whether the injury occurred before or after the new law, the key date is when the unreasonable delay occurred. Here, the delay occurred before the new law became operative; thus, new section 5814 does not apply. Such a construction, the argument concludes, honors the general language in section 47 of Senate Bill 899 that the amendment is to be applied prospectively, and is also consistent with the presumption against retroactive application of new legislation.[34]

■ In rejecting this argument we need look no further than to the statute itself. Senate Bill 899 makes clear that retroactive application is what the Legislature intended. Section 47 in Senate Bill 899 of Senate Bill 899 states in part that "[t]he amendment, addition, or repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act . . . ."[35] Senate Bill 899 was enacted long after the injuries in question. If this is all we had, we very well might conclude uniform prospective application was the rule. However, the use of "prospectively" in section 47 in Senate Bill 899 is not dispositive when other language is considered. The term is almost immediately followed by the phrase "unless otherwise specified." New section 5814(h) is precisely

---

[31] *Aetna Casualty, supra,* 30 Cal.2d at pages 392–393, 395.

[32] *McClung, supra,* 34 Cal.4th at page 475; *Myers, supra,* 28 Cal.4th at pages 840–841, 844; *Aetna Casualty, supra,* 30 Cal.2d at pages 392–393; *Evangelatos, supra,* 44 Cal.3d at page 1207–1208; *Callet, supra,* 210 Cal. at pages 67–68.

[33] CWCI points out that the Legislature knew how to limit Senate Bill 899 to future dates of injury when it desired to do so. CWCI cites as an example new section 139.48, subdivision (e)(2), which defines "employee" as "a worker who has suffered a work-related injury or illness on or after July 1, 2004."

[34] *Aetna Casualty, supra,* 30 Cal.2d at pages 392–393.

[35] See footnote 3, *ante.*

a provision that "otherwise specifies," and thus is an exception to the prospective application of the new law. Subdivision (h) states explicitly that the new section applies to all injuries, not just to some injuries or those injuries where other events occur after the operative date of new section 5814. The argument posited by Green and CAAA that new section 5814 applies only where unreasonable delay or refusal occurs after June 1, 2004, has no foundation in the statute, and neither legislative history nor other authority supports such a construction.

> 2. *The delay in the operative status of new section 5814 and the repeal of former section 5814 does not undermine retroactive application of the new statute.*

Green and CAAA argue further that the Legislature's decision to continue in effect and not repeal former section 5814, while simultaneously enacting but delaying operation of new section 5814, also evinces an intent to apply the new section prospectively. Senate Bill 899 was enacted on April 19, 2004. By its terms, new section 5814 did not become operative until June 1, 2004. Former section 5814 initially remained operative and only became inoperative on June 1, 2004; it was formally repealed effective January 1, 2005. Green and CAAA suggest that the concurrent existence of former and new sections 5814 in the Labor Code means that the new section only applies to cases where unreasonable delay of compensation occurred after June 1, 2004. Since the unreasonable delay in this case occurred in 2003, former section 5814 applies.

We reject this argument for several reasons. Foremost, former section 5814 is now repealed. Neither Green nor CAAA explains how a repealed statute can apply to the present dispute which is not final.[36] Additionally, there are simpler explanations for the short-term overlap of former and new sections 5814, reasons that do not undermine the legislative intent of retroactive application.

First, we agree with City that the Legislature intended "inoperative" to mean "unenforceable" pursuant to *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 619, 623–624 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (*Kopp*) (unconstitutional statute is inoperative or unenforceable but not void as if

---

[36] *Governing Board, supra,* 18 Cal.3d at pages 829, 831; *People v. Bank of San Luis Obispo, supra,* 159 Cal. at pages 77, 79–80; *Beckman, supra,* 4 Cal.App.4th at pages 488–489.

repealed or abolished). In the event that new section 5814 were determined to be unconstitutional, or otherwise unenforceable, former section 5814 could be reinstated without the delay occasioned by the introduction of new legislation.[37] Second, delaying implementation of new section 5814 allowed injured workers and employers to conclude some matters under former section 5814. Finally, CWCI correctly points out that by delaying the inoperative status of former section 5814 and the operative status of new section 5814, the Legislature provided an additional period to avoid the two-year statute of limitations created by new section 5814, subdivision (g),[38] consistent with *Rosefield Packing, supra,* 4 Cal.2d 120.[39]

### 3. *There are no policy considerations that preclude retroactive application.*

CAAA further claims that application of new section 5814 to prior injuries with unreasonable delays encourages further delay, and more litigation and appeals, all of which undermine the goals of Senate Bill 899. This argument, again without support in the legislative history or other authority, is simply speculation. What evidence there is suggests the contrary. As CWCI correctly notes, the policy actually expressed by the Legislature shows its concern with immediately changing the workers' compensation system. Section 49 of Senate Bill 899 provides: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time, it is necessary for this act to take effect immediately."

The mandate under new section 5814(h) that the section apply to all injuries effects the Legislature's intent to solve the crisis as quickly as possible by bringing as many cases as possible under the umbrella of the new law.

---

[37] *Kopp, supra,* 11 Cal.4th at pages 619, 623–624. See also section 42, subsection (b) of Senate Bill 899.

[38] New section 5814, subdivision (g) states: "Notwithstanding any other provision of law, no action may be brought to recover penalties that may be awarded under this section more than two years from the date the payment of compensation was due."

[39] In *Rosefield Packing,* a procedural change to the Code of Civil Procedure requiring trial within five years of filing suit was held applicable to the pending action, and not a violation of due process, since the plaintiff had a year to bring the case to trial after the amendment. (*Rosefield Packing, supra,* 4 Cal.2d at p. 122.)

CWCI cites other statutory examples of this legislative approach, such as section 6435, subdivision (b), which states: "This section shall become inoperative on January 1, 1987, and shall remain inoperative until January 1, 1991, at which time it shall become operative, unless a later enacted statute, which becomes effective on or before January 1, 1991, deletes or extends that date."

C. *Applying New Section 5814 Retroactively Does Not Reopen, Rescind, Alter or Amend any Existing Order, Decision, or Award Under Section 47 of Senate Bill 899*

Section 47 of Senate Bill 899 provides: "The amendment, addition, or repeal of, any provision of law . . . shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award." Green and CAAA argue that applying new section 5814 in this case reopens, rescinds, alters, or amends an existing order, decision, or award, and that under section 47 there is no good cause to do so.[40] The argument misstates the import of section 47.

■ Generally, statutory rights applicable to existing disputes do not survive the repeal or amendment of the statute in question, except in those cases in which appeals have been exhausted and there is a final judgment.[41] We conclude that section 47 restates the final judgment rule and makes it applicable in this context.[42]

The term "reopening" has a special meaning in this setting and typically refers to reopening an order, decision or award for new and further disability under section 5410.[43] Similarly, the phrase "rescind, alter, or amend" in section 47 refers to the good cause needed under the WCAB's continuing jurisdiction to "rescind, alter, or amend any order, decision, or award" under sections 5803 and 5804.[44] Generally, sections 5410, 5803 and 5804 apply to

---

[40] CAAA also cites *Scheftner v. Rio Linda School District* (2004) 69 Cal.Comp.Cases 1281. In *Scheftner*, a WCAB en banc majority decided that Senate Bill 899 is not applicable under its section 47 if there is an "existing order" before April 19, 2004, such as a significant order that closes discovery at a mandatory settlement conference or an order of submission after trial. However, *Scheftner* was appealed and review was granted by the Third Appellate District on February 3, 2005, rendering it uncitable as authority.

[41] *Governing Board, supra,* 18 Cal.3d at pages 828–831; *People v. Bank of San Luis Obispo, supra,* 159 Cal. at pages 79–80; *Beckman, supra,* 4 Cal.App.4th at page 489; *Graczyk, supra,* 184 Cal.App.3d at pages 1006–1007.

[42] *DuBois, supra,* 5 Cal.4th at pages 387–388, 393; *Moyer, supra,* 10 Cal.3d at pages 230–231.

[43] See *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 297, 300–301 [285 Cal.Rptr. 86, 814 P.2d 1328] *(Nickelsberg); Nicky Blair's Restaurant v. Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 941, 953–957 [167 Cal.Rptr. 516] *(Nicky Blair's Restaurant).*)

Section 5410 states in part: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation, including vocational rehabilitation services, within five years after the date of the injury upon the ground that the original injury has caused new and further disability . . . . The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction within this period."

[44] Section 5803 in relevant part states: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards . . . . [T]he appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor. [¶] This power includes the right to

orders, decisions or awards that are beyond the reconsideration period under section 5900 et seq.,[45] or where appeals have been exhausted and a decision is final or no longer pending.[46]

These statutes have no application here. Green appealed the WCAB's decision, the appellate process has not been exhausted, and there is no final judgment. As there is nothing to reopen, rescind, alter, or amend, section 47's prohibition against such action is inapplicable.

#### IV. The Agreed Medical Examiner Opinions and Stipulation May Each Result in Liability Under New Section 5814, and May Each Qualify as Separate, Legally Significant Events Under *Christian*

Under former section 5814, increased compensation could be awarded for unreasonable delay in providing benefits that are indicated by the employer's own physician. (*Berry, supra,* 276 Cal.App.2d at pp. 384–385.) Multiple increases in compensation also may be awarded for unreasonable delay in providing owed benefits where there are other legally significant events such as a "stipulation of liability." (*Christian, supra,* 15 Cal.4th at p. 511.)

Green argues that unreasonable delay in compensation occurred after both the agreed medical examiner opinions and the Stipulation; these two delays are separate, legally significant events under *Christian*; and multiple increases in compensation are awardable even under new section 5814. City contends that any unreasonable delay was part of continuous, not separate, conduct under *Christian*, and therefore only a single increase in compensation is permitted. The issue is also moot, City argues, because new section 5814, subdivision (a) (section 5814(a)) eliminates multiple increases of compensation under *Christian*.

---

review, grant or regrant, diminish, increase, or terminate . . . any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated."

Section 5803 is limited by section 5804, which states in part: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years . . . ."

[45] Section 5900, subdivision (a) states in relevant part: "Any person aggrieved directly or indirectly by any final order, decision, or award . . . may petition the appeals board for reconsideration."

[46] *Nickelsberg, supra,* 54 Cal.3d at pages 297, 300–301; *Nicky Blair's Restaurant, supra,* 109 Cal.App.3d at pages 953–957.

## A. *The Agreed Medical Examiner Opinions*

■ We agree with Green that the opinions of Drs. Weiss and Faguet as agreed medical examiners may result in liability for increased compensation under new section 5814. Green and City deferred the medical issues to Drs. Weiss and Faguet, whose opinions that compensation is owed became in effect the opinions of each party's physician under *Berry*.[47] City in fact provided benefits based on the opinions of Drs. Weiss and Faguet, and workers' compensation law favors agreed medical examiners in resolving medical disputes fairly and expeditiously.[48] Thus, strong policy supports the agreed medical examiners' opinions as a potential triggering event. New section 5814(a) allows increased compensation for unreasonable delay prior to issuance of a formal award, and we see nothing in the new law that changes the result in *Berry*. Thus, the WCAB should determine whether the compensation indicated by the opinions of Drs. Weiss and Faguet was unreasonably delayed under new section 5814.

## B. *The Stipulation*

Green and City agreed that compensation also would be provided according to the Stipulation. City does not contend that unreasonably delayed compensation under an approved stipulation cannot form the basis of an increase in compensation. The Stipulation was approved by the WCJ, and new section 5814(a) provides increased compensation where there is unreasonable delay pursuant to an award. The WCAB should likewise determine on remand whether the compensation owed pursuant to the Stipulation was unreasonably delayed under new section 5814.

## C. *New Section 5814(a) Does Not Eliminate Multiple Increases in Compensation*

■ City contends that new section 5814(a) prohibits multiple increases of compensation under *Christian*. We do not read the statutory modifications so broadly. As we have noted, new section 5814(a) makes certain changes in the manner in which increases in compensation are calculated.[49] First, the increase is not computed on the entire specie of benefit awarded but on the compensation that was delayed. Second, the percentage of the award is increased from 10 percent to a maximum of 25 percent, but the increase is capped at $10,000. Nothing on the face of the statute precludes multiple

---

[47] *Berry, supra,* 276 Cal.App.2d at pages 384–385.

[48] See *Power v. Workers' Comp. Appeals Bd.* (1986) 179 Cal.App.3d 775, 782 [224 Cal.Rptr. 758]. See also former section 4060 et seq. and new section 4062.2.

[49] See footnote 2, *ante.*

increases in compensation when the same benefit is unreasonably delayed more than once.

In *Christian*, the Supreme Court reversed the Court of Appeal, which had concluded that multiple increases in compensation were required under the facts of that case. The Supreme Court did not, however, rule that multiple increases were never warranted; rather it held that where a preaward delay has occurred, only one increase in compensation is permitted *unless* there has been an additional legally significant event. (*Christian, supra*, 15 Cal.4th at p. 518.) Multiple increases are appropriate, the Supreme Court wrote, "only when the refusal of, or delay in payment of benefits necessarily involved separate and distinct unreasonable acts by the insurance carrier. Those multiple penalties involved separate classes of benefits, individual claims for payment or reimbursement of medical or travel expenses, or a repeated refusal or delay in payment of a benefit after the same conduct had already been found by the Board to be unreasonable and a prior penalty imposed, or some analogous, legally significant event such as a stipulation of liability by the carrier had intervened between the first act for which a penalty was imposed and the second." (*Id.* at p. 511.)

The court observed that the increases can be imposed on both preaward and postaward events as former section 5814 expressly authorized both types of increases. Significantly, new section 5814(a) mirrors its repealed counterpart in this respect as each applies to delays in compensation either "prior to or subsequent to the issuance of an award."

We find the continued use of the language from former section 5814 persuasive. The Legislature enacted wholesale changes in the worker's compensation system when it passed Senate Bill 899. We must assume that it was aware of the significant Supreme Court cases (e.g., *Christian, supra*, 15 Cal.4th 505; *Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815 [153 Cal.Rptr. 590, 591 P.2d 1242]) in the field.[50] We see no indication that the Legislature intended an across-the-board elimination of multiple increases in compensation for conduct occurring either before or after an award, or both, as long as the events are "separate and distinct" under *Christian*. Based on the record before us, the agreed medical examiners' opinions and the Stipulation were legally distinct events, and support the issuance of multiple increases in compensation provided that the WCAB concludes that compensation under each was unreasonably delayed.[51]

---

[50] See *Graphic Arts Mutual Ins. Co. v. Time Travel Internat., Inc.* (2005) 126 Cal.App.4th 405, 413 [23 Cal.Rptr.3d 864]; *Collins v. Department of Transportation* (2003) 114 Cal.App.4th 859, 868 [8 Cal.Rptr.3d 132].

[51] We observe that new section 5814(a) does not contain prior statutory language that limited multiple increases under prior law. We do not see how the removal of a limitation on multiple

## V. Earlier Vocational Rehabilitation Benefits Were Waived.

Green contends that earlier vocational rehabilitation benefits are not waived. He asserts: (1) the WCAB addressed the dates on which benefits generally were owed; (2) he argued below that vocational benefits were due by implication from the Stipulation; and (3) it is unreasonable to require a party to raise every legal argument when the law in an area is so well established.

■ Legal arguments omitted from the petition for reconsideration before the WCAB and raised for the first time on review are waived under section 5904[52] and *Heath v. Workmen's Comp. App. Bd.* (1967) 254 Cal.App.2d 235 [62 Cal.Rptr. 139]. In his petition for reconsideration, Green offered only general arguments based on the evidence and the Stipulation in support of his claim to earlier vocational rehabilitation benefits. He failed to assert the legal theories he now offers here—that he is entitled to those benefits under *Pereira, supra,* 196 Cal.App.3d 1 and *Belmontez v. Workers' Comp. Appeals Board* (1992) 7 Cal.App.4th 786 [9 Cal.Rptr.2d 405]. The legal principles discussed in these two cases were raised for the first time in Green's opening and reply briefs, respectively.[53] Green cites no authority that raising an issue generally preserves claimed errors that could conceivably fall within the broadest statement of the issue. Such an approach was rejected in *Heath* and *U.S. Auto Stores* because the WCAB would be unable to correct error or provide meaningful review for appellate courts.[54] Omitting arguments before the WCAB which are raised for the first time for review actually invites error and delays final resolution of the case.[55] Accordingly, Green has waived his claim of earlier vocational benefits.

---

increases based on the specie of benefit awarded supports City's argument that multiple increases themselves are no longer available.

[52] See also *U.S. Auto Stores v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 476–477 [93 Cal.Rptr. 575, 482 P.2d 199] (*U.S. Auto Stores*).

Section 5904 states: "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration."

[53] *Pereira* deals with the circumstances under which the applicant must establish earlier prima facie evidence of vocational rehabilitation. *Belmontez* addresses the situations in which the benefits may be awarded because they were demanded in the original application.

[54] See *U.S. Auto Stores, supra,* 4 Cal.3d at pages 476–477.

[55] See *Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1166–1167 [112 Cal.Rptr.2d 540].

## DISPOSITION

The vocational rehabilitation benefits awarded by the WCAB are final. The WCAB's award of increased compensation for temporary and permanent disability indemnity and medical benefits is annulled. The matter is remanded for application of Senate Bill 899 and new section 5814, and for further proceedings consistent with this opinion.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied April 29, 2005, and petitioner's petition for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein.